CANDLER *v.* BRYAN *et al.*

852

No. 13083.   March 12, 1940.   Rehearing denied March 26, 1940.

*Morgan Belser, Philip Etheridge,* and *Augustine Sams,* for plaintiff in error.

*James A. Branch* and *Bryan, Middlebrooks & Carter,* contra.

GRICE, Justice. ■ This case was originally returned to the Court of Appeals. That court, being of the opinion that the case was one of which the Supreme Court and not the Court of Appeals had jurisdiction, transmitted the bill of exceptions and the record to this court. We must first determine whether we have jurisdiction. That question is determined by the further one, is this an equity case? It has often been ruled that whether an action is one at law or in equity is to be determined according to the allegations of the petition and the nature of the relief prayed. *Taylor Lumber Co.* v. *Clark Lumber Co.,* 159 *Ga.* 393 (125 S. E. 844) ; *City of Albany* v. *Cameron & Barkley Co.,* 121 *Ga.* 794 (49 S. E. 798) ; *Burgess* v. *Ohio National Life Insurance Co.,* 177 *Ga.* 48 (169 S. E. 364) ; *Griffin* v. *Collins,* 122 *Ga.* 102 (49 S. E. 827) ; *Williams* v. *Aycock,* 180 *Ga.* 570 (179 S. E. 770) ; *Gormley* v. *Slicer,* 178 *Ga.* 85 (172 S. E. 21) ; *Hicks* v. *Atlanta Trust Co.,* 187 *Ga.* 314 (200 S. E. 301). When from the allegations and the prayers it appears that a complainant is seeking equitable relief, the suit should be considered as a case in equity, even though it may not state a valid and subsisting cause of action for such relief. This

is true because the jurisdiction of this court is not limited to good cases in equity, but extends to bad ones also.  *O'Callaghan* v. *Bank of Eastman,* 180 *Ga.* 812, 817 (180 S. E. 847).  Equally familiar is the line of decisions holding that although a case may commence as a proceeding in equity, yet if and when the equitable features are eliminated by amendment or otherwise, the case from that point on will be treated as a case at law and not one in equity. *United States Fidelity & Guaranty Co.* v. *Koehler,* 161 *Ga.* 934 (132 S. E. 64); *Coats* v. *Casey,* 162 *Ga.* 236 (133 S. E. 237); *Byrd* v. *Piha,* 169 *Ga.* 115 (149 S. E. 699); *Martin* v. *Deaton,* 172 *Ga.* 557 (158 S. E. 331); *Brightwell* v. *Oglethorpe Telephone Co.,* 176 *Ga.* 65 (166 S. E. 646).

The petition asserted a claim in behalf of the petitioners against the defendant, and prayed for an injunction to restrain her from collecting from the executor of her husband's estate.  This alone made the case one in equity.  Before the case came on for trial, however, the parties agreed that the money which is the subject of controversy was to be deposited with a bank as trustee, to be held by it pending the determination of the present litigation.  It is contended by counsel for Mrs. Candler that by this agreement the only equitable feature of the original petition was eliminated. It does not appear, however, that the prayer for injunction was ever stricken from the petition, or that the restraining order was ever revoked.  The agreement refers to the fact that the bank, the executor, had been served with an order restraining it from paying more than three fourths of the money to Mrs. Candler, and that all parties had agreed that it should pay over to her the three fourths, but that "It is the purpose of this agreement to put the title of said fourteen thousand ($14,000) dollars and one fourth of any additional sum or sums which may be hereafter due to Mrs. May Little Candler by said executor in the Citizens & Southern National Bank as trustee, and to give to the superior court of De-Kalb County, Georgia, jurisdiction over said fund for the purpose of applying the same to the payment of any judgment that may be rendered in the pending case or in any other case or cases in any court brought upon the contract of April 2, 1929." As a matter of fact, although the agreement contains a recital that the bank was enjoined, the language of the restraining order is merely that Mrs. Candler is restrained from receiving the twenty-five per

cent. of the fifty-six thousand dollars, and there is nothing in the agreement signed by the parties in conflict therewith. Hence it can not be said that the injunction feature of the case was eliminated. But that was not the only equitable feature involved. As an alternative prayer, the petitioners asked that they have a lien on the money for the amount of the agreed-on fee, to wit, twenty-five per cent., and that said lien be foreclosed and satisfied out of said fund. Counsel for Mrs. Candler contend that while the Code, § 67-601, provides for foreclosure of mortgages in equity, it can be done only where the proceeding is in accordance with the practice of courts in equitable proceedings; that is, where it is necessary to go into equity because the remedy at law is not ample and complete. They cite, as supporting their contention, *Ford* v. *Tifton Guano Co.,* 144 *Ga.* 353 (87 S. E. 274), and *Jones* v. *Lawman,* 184 *Ga.* 25 (190 S. E. 607). Opposing counsel insist that the case is a proper one for foreclosure of its lien in equity, citing, among other authorities, *Blumenfeld* v. *Citizens Bank & Trust Co.,* 168 *Ga.* 327 (147 S. E. 581), *United Engineers &c.* v. *Fiat Metal Co.,* 175 *Ga.* 509 (165 S. E. 609), and *DeLay* v. *Latimer,* 155 *Ga.* 463, 469 (117 S. E. 446), for the proposition that a party may go into equity to foreclose, without alleging any special grounds of equitable interference. Whichever is the correct view applicable to the facts set forth, the petition seeks the equitable relief of foreclosure, and in this respect it is a case in equity, whether a good one or a bad one.

There is a third reason why this is an equity case. The complainants assert that under the contract of employment they have a certain, definite, fixed right, title, and interest in this money. It is asserted that under this contract Mrs. Candler agreed to pay them a certain named sum, and "the further sum of twenty-five per cent. (25%) of any and all amounts received by her from the estate of the said Asa G. Candler over and above her allowance for year's support and dower (if any be applied for and assigned to her), and the sum of two hundred and fifty thousand dollars ($250,000) left her by the will of Asa G. Candler." This was an equitable assignment of an interest in the fund mentioned in the petition, of which a court of equity will take cognizance. An express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular prop-

erty or fund therein described or identified a security for a debt or other obligation, creates an equitable lien on the property so indicated. Ingersoll v. Coram, 211 U. S. 335 (29 Sup. Ct. 92, 53. L. ed. 208). In *Beasley* v. *Anderson,* 167 *Ga.* 470 (146 S. E. 22), it was said that any order, writing, or act which makes an appropriation of a debt or funds amounts to an equitable assignment. See also In re Interborough Consolidated Corporation, 288 Fed. 334; 37 C. J. 308; Greil v. Montgomery, 182 Ala. 291 (62 So. 692) ; *Graham* v. *Southern Railway Co.,* 173 *Ga.* 573 (161 S. E. 125, 80 A. L. R. 407). Under any view of the matter, this is an equity case.

■ Error is assigned on the ruling of the court referring the case to an auditor, the insistence being that it was not the character of a case which our law contemplates may be sent to an auditor. By an act approved December 18, 1894 (Ga. L. 1894, pp. 123-126) the General Assembly enacted a comprehensive measure in relation to the appointment of auditors, and in section 24 thereof declared that "this act . . shall take the place of all present laws in reference to masters and auditors." The only change in the act was an act amendatory thereof, approved December 16, 1895 (Ga. L. 1895, p. 47), providing more distinctly in what cases exceptions to the auditor's report shall be submitted to a jury, and that the judges may on their own motion submit certain cases to an auditor. Our law as to auditors comprises title 10 of the Code of 1933, §§ 10-101 et seq. The present law does not limit the appointment of auditors to matters involving account, as in § 10-102, but by the express terms of § 10-101 the judge of the superior court in equitable proceedings, if the case shall require it, may refer the same to an auditor. In *Lamar* v. *Allen,* 108 *Ga.* 158 (33 S. E. 958), the Justice delivering the opinion pointed out that, "As a matter of fact, there was but one question to be determined; that is, who was the brother of Richard Lamar;" and yet the court there held : "An examination of this record satisfies us that this was a case in which reference to an auditor was pe-culiarly appropriate. No jury could have dealt with the mass of conflicting testimony in as satisfactory a way as the same was dealt with by the intelligent and able auditor to whom the case was referred." See *Darien Bank* v. *Clifton,* 162 *Ga.* 625 (134 S. E. 619) ; *Lawrence* v. *Patterson,* 170 *Ga.* 419 (153 S. E. 29). In

the instant case a motion was made to refer the same. The judge issued a rule nisi, service was effected on opposite counsel, and after a hearing an order was entered referring the case to an auditor. There was no abuse of discretion in so doing.

■ Mrs. Candler excepted to the refusal by the court, on her motion, to recommit the case to the auditor. During the progress of the trial the petitioners offered in evidence a letter dated June 27, 1930, signed by Shepard Bryan, Esq., and addressed to Harold Hirsch, Esq., in which the former inquired of the latter the present status of the Asa Candler Federal tax litigation. Counsel for Mrs. Candler objected to the introduction of this letter, on the ground that it was a self-serving declaration, was hearsay, irrelevant, and immaterial. Apparently the auditor did not make any ruling as to its admissibility, and made no reference thereto in his report. The motion to recommit on this ground is without merit. The second ground was that the auditor made no finding upon the issues made by Mrs. Candler's plea of failure of consideration. An examination of the report (findings numbered 115-120) discloses that sufficient findings upon such issues were made and reported, and that they were adverse to Mrs. Candler's contention. A third ground of the motion was based on the statement that the auditor made no finding of fact relative to her plea of payment. There was no dispute in the pleadings or the evidence as to what had been paid to Messrs. Bryan & Middlebrooks. Mrs. Candler merely contended that they were not entitled to the additional portion of the fee sued for. The fourth ground was that the issues made in the pleadings involved the question of quantum meruit, and that no finding was made thereon. We do not so construe the pleadings or the evidence. There was no error in refusing to recommit.

■ There were certain exceptions of law to the auditor's report. Aside from the ruling on the demurrers, those that are argued in the brief related to many particles of testimony offered by the complainants and allowed by the auditor, tending to show the character and extent of the services rendered by them. The objection to the reception of this testimony was that it was wholly irrelevant, since the only issue involved was whether or not the petitioners were entitled to recover twenty-five per cent. of the amount of taxes refunded by the United States Government. The record shows that when the objection was made by counsel for Mrs. Candler,

the auditor inquired of him, "Are you withdrawing your contention that they didn't render good and sufficient service?" The auditor was authorized to conclude from the answer to this inquiry that counsel did not intend to withdraw such contention, and that under the plea of failure of consideration such evidence was relevant.

■ There was an exception to the overruling of Mrs. Candler's demurrer to the petition. The parties entered into a written contract, and the suit is based upon it. Counsel apparently differ as to what were the obligations of Messrs. Bryan and Middlebrooks thereunder. Counsel for Mrs. Candler take the position that the suit shows no right of recovery in them, because it is not alleged that the money received from the Federal government, her share of which was originally thought to be fifty-six thousand dollars, was due to the efforts of the complainants. Their right·to the balance of the fee claimed, however, is dependent upon whether or not they used their best efforts to collect for Mrs: Candler from the estate of Asa G. Candler all that she was entitled to. A brief analysis of the written contract which the parties here entered into will demonstrate that the clause "and the further sum of twenty-five·per cent. (25%) of any and all amounts received by her from the estate and property of Asa G. Candler, over and above," etc., does not mean twenty-five per cent. of whatever further sum they, the attorneys, recover for her from the estate of her late husband. The contract contains four unnumbered paragraphs. The first recites that Mrs. Candler has employed complainants to represent her in all matters relating to her right, title, and interest in and to the estate of her late husband. The second recites an agreement on the part of Mrs. Candler to pay them a certain fixed sum, to wit, $10,000, and a further sum of twenty-five per cent. of any and all amounts received by her from the estate, over and above her allowance for year's support and dower and the money left her by the will. The third paragraph contains the agreement of the attorneys to represent her in her claim and to use their best efforts "to collect for her from the estate of the said Asa G. Candler all that she is entitled to as devisee, legatee, heir at law, or otherwise." The fourth paragraph merely declares that this contract shall be with Bryan & Middlebrooks as a firm and with the individual`members of the firm. The petition alleges that the plaintiffs secured for Mrs. Candler the payment to her of the sum of $250,000 left her

by the will; also secured dower for her in the sum of fifty thousand dollars in cash; also $20,000 in cash for year's support, household furniture and equipment of the value of $15,000, and also obtained an additional payment of $25,000 in cash from the estate; that she has paid them the $10,000 agreed upon, and has made additional payments on account of amounts received by her from the estate of Asa G. Candler, but has not paid them the sum sued for in this proceeding. Properly construed, the contract obligated Mrs. Candler to pay Messrs. Bryan & Middlebrooks for services undertaken and rendered by them the additional sum sued for, because it was twenty-five per cent. of an amount received by her from the estate of Asa G. Candler over and above her allowance for year's support and dower, and the $250,000 given under the will. The demurrer was properly overruled.

█ The auditor found that the parties had entered into the contract hereinbefore referred to; that by the terms of it Messrs. Bryan & Middlebrooks were to be paid the sum of ten thousand dollars, plus twenty-five per cent. of any and all amounts received by her from the estate and property of Asa G. Candler; that the attorneys fully performed the services required of them under the contract; and that as to any future services to be performed by the attorneys, they were prevented by Mrs. Candler from doing so. Exceptions of fact to these findings were filed. There was evidence to sustain the findings of the auditor. This being an equity case, it was within the discretion of the judge to decline to submit the exceptions of fact to a jury; and since the evidence supported the findings of the auditor, the judge did not err in overruling the exceptions of fact thereto. *Darien Bank* v. *Clifton,* supra, and cit. Rulings on such exceptions as are not herein specifically dealt with are controlled by rulings heretofore made. The parties made a contract and reduced it to writing. It is unambiguous. There is no suggestion that Mrs. Candler was overreached in executing it, or that as written it does not express the real agreement of the parties. The duty of courts is to aid in the enforcement of contracts, not in remaking them.

*Judgment affirmed. All the Justices concur.*