PEOPLES LOAN COMPANY *et al.* v. ALLEN *et al.*

538

No. 15154.   JUNE 8, 1945.   REHEARING DENIED JULY 6, 1945.

554

556.

*Charles G. Bruce* and *R. B. Pullen,* for plaintiffs in error.

*Noah J. Stone, Burress & Dillard, Grover Middlebrooks, Houston White,* and *A. M. Roan,* contra.

DUCKWORTH, Justice. ■ The trial court was without jurisdiction, at a subsequent term on January 19, 1945, to review its rulings of July 26, 1944, on the demurrers filed by the defendants on July 6, 1944, and July 7, 1944. No jurisdiction was reserved to consider the rulings made, and in the absence of a timely exception the rulings became the law of the case. As held in *Miralgia* v. *Bryson,* 152 *Ga.* 828 (2) (111 S. E. 655), subject to the exceptions therein stated and not here involved, "The general principle obtains that a court can not set aside or alter its final judgment after the expiration of the term at which it was entered, unless the proceeding for that purpose was begun during the term." See also *Rogers* v. *Rigell,* 183 *Ga.* 455 (188 S. E. 704); *Crowell* v. *Crowell,* 191 *Ga.* 36 (11 S. E. 2d, 190). To have modified or altered the original judgment would have required a reversal by this court upon proper assignment of error by the petitioner, and, accordingly, the judgment of the trial court in again overruling the demurrers is affirmed. There remains for consideration, there-

fore, only the judgment of January 12, 1945, on which error is properly assigned.

After the amendment of January 2, 1945, the said four defendants renewed grounds of demurrer, but specifically limited the renewal as follows: "The defendants renew all of the grounds of their original demurrers to the plaintiff's petition as thus amended, to wit:" (Naming the same six grounds hereinbefore mentioned and designated as general by the demurrants.) The demurrer added new grounds numbered 8 to 18, inclusive. Of the six so-called general grounds, those demurring because of alleged multifariousness and misjoinder and nonjoinder of parties and causes of action are not general but are special grounds, and are without merit for the reason that, as required by law, they fail to point out wherein the petition as amended is defective in the particulars urged. The only general grounds remaining for consideration by this court are: (1) No cause of action is set forth against the demurrants; (2) There is no equity alleged against them; (3) If the petitioner has any remedy against them, she has an adequate remedy at law; (4) It is not alleged that the defendant E. W. Allen is insolvent. Counsel for the demurrants insists that while the demurrers list the "general grounds" which they renew, general grounds not listed should also be considered by this court because the demurrants might merely have stated that they renewed *all* general grounds of their previous demurrers. While it is true that such a recital would have brought under review all general grounds so renewed, the language of the renewed demurrers can not be broadened beyond the express limitation.

Besides those named, no grounds, whether special or general, urged before the last amendment of January 2, 1945, are renewed, and therefore must be considered as abandoned and moot. *Howard* v. *Allgood,* 143 *Ga.* 550 (1 a) (85 S. E. 757); *Livingston* v. *Barnett,* 193 *Ga.* 640 (1 a) (19 S. E. 2d, 385). It follows from the above that, besides the four-mentioned general grounds, the only other grounds entitled to consideration are those added by the last renewed demurrer of January 2, 1945, being grounds 8 to 18, inclusive, and hereinafter referred to.

A conspiracy is defined as "the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or im-

moral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means." 1 Eddy on Combinations, § 171; *Horton* v. *Johnson,* 192 *Ga.* 338, 346 (15 S. E. 2d, 605). The conspiracy is not the gravamen of the charge, but may be both pleaded and proved as aggravating the wrong complained of and enabling the petitioner to recover in one action against all as joint tort-feasors. *National Bank of Savannah* v. *Evans,* 149 *Ga.* 67 (99 S. E. 123); *Bentley* v. *Barlow,* 178 *Ga.* 618 (173 S. E. 707). "So far as the conspiracy is concerned, no further specification is required than the general terms in which it is pleaded in the declaration; and this is true although the jurisdiction of the court to render judgment against one or more of the defendants depends upon allegations and proof of conspiracy." *National Bank of Savannah* v. *Evans,* supra; *Walker* v. *Grand International Engineers,* 186 *Ga.* 811, 820 (199 S. E. 146). The allegations of the petition as amended set forth a conspiracy against named defendants to aid and abet E. W. Allen to forestall the petitioner in the collection of the two judgments described in the petition as amended, and accordingly any act done by one of the conspirators is chargeable to all of them. *Wall* v. *Wall,* 176 *Ga.* 757 (4) (168 S. E. 893); *Grant* v. *Hart,* 192 *Ga.* 153, 156 (5) (14 S. E. 2d, 860). The liability is joint and several. *Smith* v. *Manning,* 155 *Ga.* 209 (2) (116 S. E. 813); *Wall* v. *Wall,* supra.

Of the named defendants only Peoples Loan Company, a corporation, J. H. Geffken, J. Earle Smith, and R. B. Pullen are plaintiffs in error here. It is strongly insisted by them that whatever was done by them or participated in with respect to the sale of the assets of Peoples Loan Incorporated, its dissolution, the transfer by J. Earle Smith, the purchaser, of the "undistributed portion" of the assets to Peoples Loan Company, and the formation of that corporation is not shown to have been otherwise than the exercise of lawful rights. Nevertheless, it is charged by the petitioner that all of these entered into a conspiracy with E. W. Allen to hinder or delay her in the collection of her two judgments, and that all of the alleged acts were in pursuance of that conspiracy. While it is alleged that the original conspiracy was formed in August, 1943, and Peoples Loan Company is not shown to have been incorporated until May 18, 1944, its entrance into the con-

spiracy after its inception would equally bind it as to any wrongful act done by any one of the conspirators in pursuance of the general design to oppress the petitioner, notwithstanding that the acts might in and of themselves have been ordinarily lawful, since, as hereinbefore defined, a conspiracy is not only a combination of two or more persons to do something that is "unlawful, oppressive, or immoral," but is also a combination to do something that is "not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means." Hence, the contention that the defendants, who are plaintiffs in error here, are not charged with participating in an illegal conspiracy is without merit.

"The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz: . . Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid." Code, § 28-201 (2). As was said in *Burkhalter* v. *Glennville Bank,* 184 *Ga.* 147, 153 (190 S. E. 644) : "A conveyance of property for a present valuable consideration may be void as to creditors under this section, and a deed to secure a debt is as much open to attack for fraud as an absolute conveyance." It is charged not only that the conveyance by E. W. Allen was in pursuance of the conspiracy, but that Mary B. Allen was a party to the conspiracy. Hence, she necessarily knew of his intention to delay and defraud the petitioner by this method or at least had ground for reasonable suspicion. See *Cunningham* v. *Avakian,* 192 *Ga.* 391, 394 (15 S. E. 2d, 493). Moreover, it is charged that the conveyance was without consideration, and "a voluntary deed is void as to creditors, though the grantor be not insolvent at the time of making the deed, if his purpose in so doing was to hinder, delay, or defraud creditors; and this would be true whether the donee knew of the fraudulent intention or not." *May* v. *Leverett,* 167 *Ga.* 205 (144 S. E. 778). See also *Citizens & Southern Nat. Bank* v. *Kontz,* 185 *Ga.* 131, 147 (194 S. E. 536). The loan deed to Mary B. Allen was subject, therefore, to be set aside after notice to the nonresident by publication as provided by the Code, § 81-205 (2), and as prayed here.

On the same principle the transfer of the 32 shares of stock in Magnolia Cemetery Incorporated to Mary B. Allen may be set aside by a court of equity. "The fact that the value of the property covered by several conveyances was largely in excess of the amount of the debt due petitioner did not afford ground for demurrer. All of these conveyances, having, according to the allegations of the petition, been executed in pursuance of a common scheme, could be attacked without reference to the amount of the judgment creditor's debt as compared to the value of the property conveyed in the several deeds." *Cowan* v. *Nicholson,* 158 *Ga.* 425, 428 (123 S. E. 681). As to the claims of liens for attorneys' fees filed by R. B. Pullen and Noah J. Stone, the petition sets out a copy of the same, showing that they were based on alleged services in the two suits in which the petitioner obtained judgments against E. W. Allen; and it is charged on information and belief that they are invalid, because (1) the services had not been completed at the time they were filed ·in May, 1944; (2) that they had been. paid in full for their services; and (3) the services were not rendered in defense of suits for the recovery of specific property. It was alleged that, in making and filing the claims of lien, Pullen and Stone were acting in conspiracy with E. W. Allen with the actual intention of hindering, delaying, or defrauding the petitioner in the collection of her two judgments as to the amount due and also the future installments of alimony. Such allegations form a sufficient basis for equity to set aside such claims of lien.

It is contended by the plaintiffs in error that the allegations of the petition, construed most strongly against the pleader, show the total value of the East Point lot, the interest in the DeKalb County realty, and the printing machinery and equipment to be in excess of the amount of the judgments now due, in support of which contention it is pointed out that in the amendment of December 10, 1943, to the petition for divorce and alimony the value of the printing machinery and equipment is placed at $7500, which, added to the stated value of the other two properties, would in fact amount to more than the amount now due under the judgments. The value of $3500 was fixed as of the time of the filing of the present petition on June 9, 1944. This court is unable to say that the value had not decreased since December 10, 1943, and on demurrer the allegation of $3500 must be taken as

true. So treating it, the combined values would amount to $13,725 or less than the amount alleged to be now due under the two judgments.

It is further contended by the plaintiffs in error that the petitioner is not entitled to the relief sought in equity because she might in the manner prescribed by law have levied on the shares of stock in Peoples Loan Incorporated, for which Allen received from the sale of its assets to J. Earle Smith the sum of $30,044. It must be remembered, however, that the decree in the suit for recovery of moneys under an implied trust had been appealed from by E. W. Allen, and was not affirmed by this court until September 1, 1944, and that the decree in the suit for divorce and alimony was not entered until June 1, 1944. It is alleged that in connection with the appeal by E. W. Allen no supersedeas bond was filed. While the petitioner might, under the provisions of the Code, § 39-123, have levied on the shares of stock owned by Allen in the corporation, she also appealed from the judgment in the suit for moneys under an implied trust, and by recognizing the judgment as valid and prosecuting a fi. fa. and levy she would have waived her right to be heard on an appeal. See *Grizzel* v. *Grizzel,* 190 *Ga.* 219 (9 S. E. 2d, 247); *Allen* v. *Allen,* 198 *Ga.* 267 (31 S. E. 2d, 481). In foregoing the right to levy under such circumstances, it could not be said in equity that she has been guilty of laches. In the meantime, before June 1, 1944, the assets of Peoples Loan Incorporated had been sold and the corporation dissolved. Allen was paid $30,044 as his share in the distribution of the purchase-price, and while it is alleged that he transferred his shares of stock to J. Earle Smith, the purchaser, who was also the liquidating agent for the stockholders, even if they had not been transferred they would have had no actual value for the purpose of levy and sale. Allen having possessed himself of the $23,000 which he had on deposit with Peoples Loan Incorporated, and the $30,044 received from the liquidating agent as his share of the purchase-price of the assets of that corporation, and having, on May 9, 1944, before any final decree in favor of the petitioner, gone beyond the jurisdiction of the courts of this State, and concealed his money as alleged, the petitioner was without any adequate remedy at law at the time of filing the present action. Therefore she sought the aid of a court of equity to set aside the fraudulent

conveyances, and to have a receiver appointed to take charge of such assets and also under the control of the court to search out and possess himself of the assets alleged to have been concealed by E. W. Allen, and from such assets so possessed to have a sum impounded with the court sufficient to pay the sum now due under her two judgments and also future installments of alimony.

"Creditors without lien may not, as a general rule, enjoin their debtors from disposing of property, nor obtain injunction or other extraordinary relief in equity." Code, § 55-106. But even in the case of a creditor without a lien it has been held in a number of cases that special circumstances might exist rendering the general rule inapplicable. In *Cohen* v. *Meyers,* 42 *Ga.* 46, it was held: "A bill by creditors charging that the debtor, who is insolvent, has fraudulently transferred his property, a stock of dry goods, to a third person who is in complicity with the fraud, and who is rapidly selling them at retail to other persons, and praying the appointment of a receiver, is not demurrable, on the ground that the complainants do not show that they have sued their claims to judgment at law." In *Albany &c. Iron & Steel Co.* v. *Southern Agricultural Works,* 76 *Ga.* 135, 169 (3) (2 Am. St. R. 26), it was said: "Another question made and argued with much ability and force by the learned and indefatigable counsel for the respondents is, that the complainants, who are creditors without any lien, have no right to invoke the remedial aid of a court of equity until their claims are reduced to judgment; and that such was generally the rule at the time this conveyance was executed is undeniably true; but that special circumstances may exist rendering the rule inapplicable is equally true, and we find that some of those circumstances do exist in this case; such, for instance, as the insolvency of the debtor, who, it is alleged, has fraudulently transferred his property to one who is in complicity with him in the fraud, and who is rapidly disposing of the property, or where the property is obtained by fraudulent representations with which the assignee is concerned. [Citing] And when to these circumstances is added the further fact that large supplies of goods were obtained with a view of making the very assignment in question, to enable the assignee to carry on the business of the party making the assignment for an indefinite period of time, and that these goods are embraced not only in the deed of assignment, but like-

wise in mortgages contemporaneously executed to certain of the creditors preferred by the conveyance, including the assignee himself, to aid, as charged, any defects existing therein which might render it void, and thus prevent the accomplishment of the scheme entered into by the parties, we think a strong case is made for the interposition of equity by an injunction and the appointment of a receiver, whether the complainants had reduced their demands to judgment or not." In *Hermann* v. *Mobley,* 172 *Ga.* 380 (158 S. E. 38), it was held: "Creditors without lien can not, as a general rule, enjoin their debtors from disposing of property, nor obtain injunction or other extraordinary relief in equity. Civil Code (1910), § 5495. An exception to the general rule is where an insolvent debtor is fraudulently transferring his property to one in complicity with him, who is disposing of the property, or where property is obtained by fraudulent representations." For other cases dealing with exceptions to the general rule, see *Elliot* v. *Macauley,* 177 *Ga.* 96 (2) (169 S. E. 358); *Goodroe* v. *C. L. C. Thomas Warehouse,* 185 *Ga.* 399 (3) (195 S. E. 199). The petitioner here, while having no special lien, did have a general lien under her two judgments. Though the judgments did not of themselves constitute a lien on choses in action of Allen for the purpose of levy and sale without more, yet because of them the petitioner could through collateral proceedings effectively fix the lien of the judgments on such choses in action. However, at the time of the filing of the present action Allen had already transferred his shares of stock in Magnolia Cemetery Incorporated, to his nonresident sister, and had also executed to her a loan deed to his half interest in the DeKalb County property, and, with the exception of the East Point lot and the printing machinery and equipment, had converted his assets into cash or its equivalent and concealed the same. He is alleged to be insolvent. While it is contended by the plaintiffs in error that the petition as amended shows him to be worth $70,000 or more, it is not shown that he has in this State assets which are in value equal to the amount due under the two judgments and which by execution and levy would produce the sum due under the two judgments of the petitioner. We think, therefore, that the petition alleges sufficient facts and circumstances rendering the general rule inapplicable, and presents a situation where upon proof a court of equity may grant the

prayers for setting aside the alleged fraudulent conveyance and the transfer to Mary B. Allen, as well as the alleged fraudulent claims of lien for attorney's fees, and for the appointment of a receiver to take charge of the assets of E. W. Allen and under the direction of the court to sell enough to pay the petitioner the amount now due under her two judgments. Here is presented the case of a husband seeking to place his property where it may not be reached by a judgment creditor. In so far as the petitioner is concerned, the concealment is equivalent to waste or destruction. "Equity may appoint a receiver to take possession of, and hold subject to the direction of the court, any assets charged with the payment of debts, where there is manifest danger of loss, or destruction, or material injury to those interested." Code, § 55-305; *Wood* v. *Wood,* 166 *Ga.* 519 (3) (143 S. E. 770); *Cochran* v. *Cochran,* 173 *Ga.* 856 (3) (162 S. E. 99). E. W. Allen being now within the jurisdiction of the court, equity may control him by appropriate orders as to the personal property outside of this State. "Equity may decree in cases of fraud, of trust, or of contract, although property not within the jurisdiction may be affected by the decree." Code, § 37-1204. "Equity may enjoin the defendant as to transactions beyond the limits of this State." § 55-112. See *Engel* v. *Scheuerman,* 40 *Ga.* 206 (2 Am. R. 573), where it was held that equity would enjoin the enforcement of a judgment obtained in New York where the plaintiff had in this State sued for the same claim and obtained a judgment which had been paid off and satisfied.

The allegations of the petition that the four defendants, who are plaintiffs in error before this court, conspired with the other named defendants to forestall the petitioner in the collection of the two judgments obtained by her against the defendant E. W. Allen, various wrongful acts by some of the defendants in pursuance of the alleged conspiracy being set forth, stated a cause of action against the four defendants, and the trial court did not err in overruling their general demurrer.

■ Besides the general grounds of demurrer hereinbefore dealt with, the plaintiffs in error filed to the petition as finally amended eleven voluminous grounds. It is deemed unprofitable to further prolong the report of this case by detailing them here. It is sufficient to say that after a careful and minute examination of these additional grounds we hold that they are without merit.

In the opinion as first prepared by this court, and, in response to a request from counsel for the defendant in error that we point out the various relief to which the petitioner might be entitled under the allegations of the petition as finally amended, we made certain rulings in addition to those above stated. Upon consideration of a motion for rehearing filed by the defendant in error, and since under repeated rulings by this court a judgment overruling a general demurrer to the petition as a whole must be affirmed if the petition sets forth a cause of action for any of the relief prayed for (*Blaylock* v. *Hackel,* 164 *Ga.* 257 (5), 138 S. E. 333; *Tietjen* v. *Meldrim,* 169 *Ga.* 678, 151 S. E. 349; *Nance* v. *Daniel,* 183 *Ga.* 538, 547, 189 S. E. 21; *Pullen* v. *General American Credits,* 186 *Ga.* 642, 647, 198 S. E. 747; *Robertson* v. *Robertson,* 196 *Ga.* 517 (3), 26 S. E. 2d, 922), we have concluded that such rulings should have not been made, inasmuch as they were unnecessary to a decision based on the general demurrer to the petition as a whole and perhaps might be unauthorized. Accordingly, they have been eliminated in this opinion, which has been substituted for the one first prepared.

It might be added that while, in the consideration of a judgment pursuant to a verdict on the evidence, affirmances might be made with direction or modification (See *Finleyson* v. *International Harvester Co.,* 138 *Ga.* 247 (3), 75 S. E. 103; *Savannah Bank & Trust Co.* v. *McQueen,* 149 *Ga.* 302 (6), 100 S. E. 33; *Smithloff* v. *Weinman,* 165 *Ga.* 449 (5), 141 S. E. 205; *Sims* v. *Boyd,* 177 *Ga.* 465, 170 S. E. 375), qualified affirmances are not proper in a case where, as here, the judgment reviewed is one overruling a general demurrer to the petition as a whole. If a portion of a petition is bad in substance, though elsewhere setting forth a cause of action, the proper method of attacking the bad substance would be by demurrer to such portion. We are aware that this court in *Harris* v. *Bandy,* 182 *Ga.* 844 (187 S. E. 99), in reviewing a judgment overruling a general demurrer to the petition as a whole, held that a cause of action was set forth for cancellation and injunction but not for specific performance, and affirmed in part and reversed in part the judgment of the trial court. That decision, however, was concurred in by only four Justices and is not binding upon this court, and, as we believe it to be unsound and contrary to previous decisions concurred in by six Justices, it

is expressly disapproved and will not be followed. The attack there, as here, was made on the petition as a whole, and since this court ruled that the petition set out a cause of action for some of the relief prayed for, the judgment overruling the general demurrer should have been unqualifiedly affirmed.

Of course, where a general demurrer is *sustained* by the trial court the effect of such ruling is to adjudge that the petition is not good in any of its parts, since the attack requires the court to examine every portion of the petition. If it be found by this court on review of such judgment that in some part of the petition a cause of action is set forth, the proper judgment should be one of affirmance in part and reversal in part, leaving the plaintiff at liberty to pursue his action for such relief as the allegations of the petition show him entitled to.

Where a petition is generally demurred to on several grounds and the demurrer is sustained, it will be presumed that the demurrer was sustained on all of the grounds. If on review by this court it be determined that the petition was not subject to one of the grounds of demurrer, though subject to the other grounds, the judgment would not be unqualifiedly affirmed, since the ruling of the trial judge had the effect of adjudicating in favor of the demurrant all the grounds of the demurrer and a general affirmance by this court would put an end to the case. In these circumstances, the judgment would be affirmed with direction that it be modified so as not to adjudicate in favor of the demurrant the ground which this court holds to be without merit. *Herring* v. *Smith*, 141 *Ga.* 825 (82 S. E. 132).

The distinctions above pointed out are not always clearly borne in mind by counsel for litigants, and it has been thought proper to present them at this time.

*Judgment affirmed. Bell, C. J., Jenkins, P. J., Atkinson and Wyatt, JJ., concur.*