34412. CITY OF ROYSTON *v.* LITTRELL ENGINEERING COMPANY.

Decided April 1, 1953.

*A. S. Skelton, Carey Skelton, Linton S. Johnson, Clete D. Johnson,* for plaintiff in error.

*Ray Merritt, G. Fred Kelley,* contra.

GARDNER, P. J. 1. The present case is to recover a general judgment against the City of Royston for damages alleged to have been caused by the breach by the city of a contract made with Littrell Engineering Company to install a natural-gas system for said City of Royston. The trial judge overruled the general demurrer, and the case is here upon exception to that ruling.

It appears from the allegations of the petition, attached to which are the two agreements referred to, that the defendant city was desirous of having installed therein a natural-gas system and service for its citizens; and, in order to determine whether it would be practical and feasible to do so, that is, whether such system could be installed and feasibly operated to make its use by the city beneficial to the city and to those consuming the gas, the city engaged the services of Littrell to go into the matter and make the proper surveys, plans, and investigations, and furnish the city the result of his work; and, if the operation of the system appeared feasible to the mayor and council of the city, a natural-gas system would be installed therein, and the services of this engineer would be engaged to supervise and superintend such installation, the engineer to receive for his services ten percent of the money provided for the installation of said system ($330,000), which amounted to $33,000. Littrell transferred and assigned this agreement over to the present plaintiff, Littrell Engineering Company, and said survey and plans were made, presented to the mayor and council, and accepted on October 19, 1950, at which time the city made a contract with the plaintiff company to supervise the installation of such gas system. However, before engaging a contractor to do the installing, the city discharged the plaintiff and engaged another engineer to supervise the installation of such natural-gas system.

The plaintiff sued to recover the $33,000 which it would have made had it been permitted to complete the contract and super-

vise said installation, less the expense it would have incurred of $5100. It is set out that the action of the city made it impossible for the plaintiff to complete said contract, and such failure was not its fault. The petition made a case to recover damages for breach of contract, such damages being those which naturally and directly flowed from and resulted from the defendant's wrongful failure and refusal to carry out said agreement.

Where the non-performance of a contract is caused by the act or fault of the opposite party thereto, the failure of the other party is excused. Code, § 20-1104. "Where a party bound by an executory contract repudiates his obligation before the time for performance, the other party has the option to treat the contract as ended so far as future performance is concerned, and to maintain an action at once for the damages occasioned by the breach. *Crosby* v. *Georgia Realty Co.*, 138 *Ga.* 746 (76 S. E. 38). This is true whether the contract is wholly executory or has been partially executed." *Shell Petroleum Corp.* v. *Jackson*, 47 *Ga. App.* 667, 670 (171 S. E. 171). The plaintiff alleged that it performed the contract insofar as it was able to do, the same amounting to about 80 percent of the work to be done. It made all the preliminary plans and specifications. All that was left was for the city to engage the contractor and begin the installation, and for the plaintiff to supervise the same. The plaintiff could not do more. It was discharged and another engineer hired. The two contracts, the preliminary agreement transferred by Littrell and the agreement of October 19, 1950, are to be considered together as one agreement, and are sued on as such. In a proper case the plaintiff is not limited to a quantum meruit recovery, but may rely on the contract and recover the value thereof. *Parker* v. *King*, 68 *Ga. App.* 672 (23 S. E. 2d, 575).

2. It appears from the petition that the engineering company is seeking to recover of the defendant municipality a general judgment for damages sustained as a result of the alleged breach by the city of a contract whereby the plaintiff was to install a natural-gas system in the City of Royston. The petition alleged that it was to receive 10 percent of the cost of installing the system, which was $330,000, and that it was damaged in the

sum of $33,000, less certain expenses which were to be paid by it for the printing of bonds, legal fees, and the like, and that it was therefore entitled to recover $27,900 of the city. No special judgment or judgment against any special fund is sought. The prayer is to recover of the city $27,900 as damages occasioned by the defendants' breach of contract. The petition set out a cause of action showing a breach of this contract, but not to recover a general judgment against the city. The plaintiff would be entitled to recover only from the fund raised by the sale of the revenue-anticipation certificates or bonds issued by the city, pursuant to election duly held authorizing the same, and sold, as alleged. Whatever sums were realized therefrom could be subjected to any judgment or valid claim for expenses incurred, or liabilities arising out of the installation of this system of natural gas, or the contracting therefor, such as for a refusal to perform or breach on the part of the city.

The State Constitution, art. VII, sec. VII, par. I, limits the power of municipalities to create debts. Par. II thereof provides for the levy of taxes to pay bonds issued for improvements under the Constitution; par. III provides that upon a special election such indebtedness may be increased as therein set out. See Code (Ann.), §§ 2-6001, 2-6002, 2-6003.

"Revenue anticipation obligations may be issued by any . . municipal corporation . . to provide funds for the purchase or construction . . of any revenue producing facility . . which such . . municipal corporation . . is authorized by the Act . . approved March 31, 1937 . . as amended by the Act approved March 14, 1939, to construct and operate, or to provide funds to extend, repair or improve any such existing facility, and to buy, construct, extend, operate and maintain gas or electric generating and distribution systems." The section provides that such certificates or bonds "shall be payable . . only from revenue produced by such revenue-producing facilities . . and shall not be deemed debts of, or to create debts against," the municipality. The Constitution then provides that "no such political subdivision of the State shall exercise the power of taxation for the purpose of paying the principal or interest of any such revenue-anticipation obligations or any part thereof." Constitution, art. VII, sec. VII, par. V; Code (Ann.), § 2-6005.

The act referred to provides that a city may install and construct revenue-producing systems, plants, works, and instrumentalities, operate the same within and without the territorial limits, collect the revenue, and issue revenue-anticipation certificates to finance in whole or in part the cost of the acquisition and .construction thereof. The city is given the power to. make all contracts necessary to carry this power into effect and have said system installed. See Code (Ann. Supp.), § 87-801 et seq. It is under the foregoing constitutional provision and statutes pursuant thereto that the City of Royston had the right, power, and authority to enter into the contract with the plaintiff engineering company which is sued on in this case, and under which the plaintiff and the defendant agreed that the plaintiff could install the natural-gas system for $330,000, for the breach by the city of which the present action is brought.

Any expenses incurred or any liabilities arising against the city by virtue of any contract made and entered into between- the city and another to acquire and construct or install a natural-gas system—which is an income-producing facility—for said city, would not constitute and be an ordinary and general debt of the city, such as could be paid out of the general funds of the city or out of funds raised by any general or ordinary tax, but the same could be paid for and satisfied only out of funds arising from the sale of revenue-anticipation obligations or certificates, issued upon vote of the people, approving and authorizing the same, for the purpose of acquiring and installing such revenue-producing facility. The Constitution plainly so provides. The statute above cited clearly follows the Constitution. The contract sued on was made under the above law and constitutional provisions. It was expressly agreed therein that the city incurred no expense under the contract which was to be paid from funds 'other than the funds provided for the construction of the system, and that the certificates "shall not be general obligations of the City of Royston."

In the case of *Town of Fort Oglethorpe* v. *Catoosa County*, 80 *Ga. App.* 188, 189 (55 S. E. 2d, 753), this court held that "Revenue anticipation certificates issued under Code (Ann. Supp.) Ch. 87-8 do not subject the political subdivision of this State issuing the same to any pecuniary liability thereon and

are therefore not debts against such political subdivision within the meaning of the constitutional provision limiting such indebtedness." In *Miller* v. *Head,* 186 *Ga.* 694, 709 (198 S. E. 680), the Supreme Court held that the "act is designed to provide for self-liquidating projects, and the revenue certificates therein contemplated are not to be a charge against the general credit of the county or municipality. The liability is to be satisfied only from revenues produced by the undertaking, and under the specific terms of the statute the political division will never be required to aid in its retirement with funds derived from any other source, and is in fact prohibited from doing so." The above decision further holds that these certificates provide the funds to be used in defraying the expenses of the undertaking, and that the political subdivision by issuing such certificates and bonds does not create an indebtedness or liability within the meaning of the constitutional or statutory debt limitation. Such expenses are not a general debt of the city.

It follows, by applying the above constitutional provisions and the law and decisions pursuant thereto, that any damages which might have been sustained by the plaintiff by any alleged breach by the city of the contract to install this system, or growing out of the contract or the preliminary negotiations pursuant thereto, any expenses incurred, liabilities arising, and so on, are not debts against the city and can only be paid out of the funds derived from the sale of the certificates, issued for the construction of the income-producing project, upon a vote of the city for that purpose; and that the plaintiff contractor would not be entitled to recover judgment against the city generally for any expenses incurred or damages sustained by reason of the city's failure to perform or improper compliance with any contract for the installation of this natural-gas system. A proper decree or judgment against any funds belonging to the city derived from the sale of such certificates or received from the income-producing project, if properly prayed for in a proper proceeding, could be obtained.

It follows that the plaintiff cannot recover the judgment sought, and the petition should have been dismissed.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*