35325. IRWIN *et al. v.* YOUNG *et al.*

DECIDED MARCH 17, 1955—REHEARING DENIED MARCH 31, 1955.

*Hal Lindsay, John W. Crenshaw, W. G. Grant,* for plaintiffs in error.

*William H. Schroder, Troutman, Sams, Schroder & Lockerman,* contra.

QUILLIAN, J. 1. The general ground that the verdict was against the superior weight of the evidence is addressed to the discretion of the trial court and is not for review here.

The general ground that the verdict was without evidence to support it requires a careful perusal of the evidence at the trial.

There is competent evidence in the record authorizing the jury to find that the parties entered into a contract consisting of the matters referred to in the foregoing statement of facts. By the terms of this contract, the plaintiffs were employed by the defendants to obtain a reduction in the amount of income taxes exacted of them by the Government over two named periods of time, the years 1915 to 1938 and 1939 to 1945 inclusive.

In consideration of the plaintiffs' services, the defendants agreed to pay them a certain amount of per diem and an "amount equal to seven and one-half percent of any reduction in the proposed taxes and penalty as disclosed" by the report of the Internal Revenue Agency covering the years aforementioned upon the final settlement of the defendants' tax case. Evidence was submitted that the plaintiffs entered upon the discharge of the duties required of them by the contract, and continued to render services agreeable to its terms until the defendants by certain wrong conduct prevented the future performance of the contract. The evidence referred to was that the defendants withheld certain information concerning transactions engaged in by the defendants in the State of California essential to the proper compilation and computation of the defendants' income over a period of years covered by the contract; that, without the information referred to, the plaintiffs could not make up a statement showing that the defendants were entitled to a reduction in their income taxes for the years referred to in the contract. The evidence introduced showed that, thereafter and before the filing of the present suit, the defendants did settle their tax case with the Government for a named amount, resulting in a reduction of the taxes and penalties for the years named in the contract.

The evidence was in sharp conflict on each of the material issues of the case, and while it was not at all conclusive nor was the verdict rendered demanded, we are constrained to hold that the verdict returned by the jury was not without evidence to support it.

The defendants insist that the evidence did not show that the settlement between the defendants and the Government, resulting in a reduction of amount of the Government's claim of

income tax due by the defendants, was accomplished by efforts of the plaintiffs, and that for this reason they are not entitled to recover; that the contract did not provide that the plaintiffs were to be paid for the work on the basis of the amount by which they succeeded in reducing the Government's claim against the defendants, but provided that their compensation was to be computed upon the amount by which the claim was ultimately reduced. The defendants' position is not well taken. For supporting authority see *Candler* v. *Bryan,* 189 *Ga.* 851 (8 S. E. 2d 81).

The defendants insist that, though the plaintiffs proved that the defendants wrongfully prevented them from carrying out the contract of employment, they would not be entitled to recover for a breach of the contract, but that their only remedy would be a suit in quantum meruit for the value of the services actually rendered by them. The position is not well taken. Uniformly the courts of this State have held that an employee who is circumvented from performing his contract by the wrongful act of the employer may sue for a breach of the contract, and that the measure of his damages is the value of the contract to him. *City of Royston* v. *Littrell Engineering Co.,* 87 *Ga. App.* 903 (75 S. E. 2d 678); *Candler* v. *Bryan,* 189 *Ga.* 851, supra.

We have carefully examined authorities cited by counsel for the defendants (plaintiffs in error here), among which are several Georgia cases. None of them is authority for any different view from that expressed by this opinion.

2. Grounds 4, 5, 6, 7, 8, 10, 12, 13, 14, 16, 17, 18, 19, 20, 21 and 22 of the motion for new trial each recites that certain evidence was admitted over stated objections of counsel for the movant. However, none of these grounds asserts that the admission of the evidence was erroneous. Under authority of numerous holdings of our appellate courts, the grounds cannot be considered. *Binion* v. *Georgia Southern &c. Ry. Co.,* 118 *Ga.* 282 (1) (45 S. E. 276); *Kelley* v. *Kelley,* 142 *Ga.* 861 (1) (83 S. E. 856); *Henley* v. *Brockman,* 124 *Ga.* 1059 (4) (53 S. E. 672); *Sims* v. *Quillian,* 147 *Ga.* 200 (93 S. E. 200); *Loggins* v. *Loggins,* 191 *Ga.* 779 (14 S. E. 2d 91).

Moreover, it was not made to appear in any of these grounds that the ruling referred to was prejudicial to the defendants. For this additional reason the grounds cannot be considered.

*Cathey* v. *State*, 28 *Ga. App.* 666 (3) (112 S. E. 915); *Campbell* v. *Walker*, 20 *Ga. App.* 88 (4) (92 S. E. 545).

The bill of exceptions does assign error on the admission of the evidence referred to in the above-mentioned grounds, but cannot thus supply the deficiency of the motion for new trial. *Sims* v. *Quillian*, 147 *Ga.* 200, supra.

3. Grounds 11 and 15 of the amended motion for new trial relate that a motion for mistrial was made by the movant, repeat colloquies between the court and counsel, also specifically detail the grounds upon which the motions were predicated, and state that the motion was overruled, but contain no complaint that the court's ruling was error. Nothing was presented by these grounds for the consideration of the trial court or for review here.

4. Grounds 23 and 24 complain of rulings upon pleadings that could be made only by bill of exceptions and not by motion for new trial. *Henley* v. *Brockman*, 124 *Ga.* 1059, supra.

5. The charge complained of in special ground 25 was a mere recital by the court of what was alleged in the plaintiffs' petition. The criticism of the charge is that the paragraph referred to by the court had been stricken by demurrer, and the issue raised by it had been previously eliminated by a statement in judicio. The paragraph contained the same substance as a contract or exhibit attached to the petition, which was not stricken on demurrer or otherwise deleted from the petition.

The plaintiffs' counsel did state that no recovery was asked for services rendered under the terms of the contract referred to in the charge. An amendment to the petition also contained an express averment to the same effect. The amendment was read by the trial judge to the jury in charging them as to the issues presented by the pleadings.

The contract referred to was shown by the petition to have been merged with another contract, so that each became an integral part of the other. The suit was brought for the breach of the latter contract. The rules of good pleading required of the plaintiffs that they set out in the petition the entire contract sued upon, though all damages claimed by them arose from the breach of a particular part of the contract. This is true because it would be difficult for the courts to determine whether a contract had been breached when only a portion of it was set out.

The ground fails to show either error in the charge or hurt to the defendants' case by reason of it.

6. Ground 26 complains that the court charged the jury that certain averments made in the petition had been stricken. The court read in the stricken paragraph and an amendment substituting another paragraph in its stead. The charge was clear, understandable, and not subject to any criticism made of it.

7. Ground 27 complains that the court charged the jury: "Now, gentlemen, the plaintiffs in this case contend that they were employed under a contract set out to do certain things. They contend that they were ready, willing, and able to carry out their part of the contract and that they were prevented from carrying out the contract by acts on the part of the defendants such as to render it impossible for them to perform the contract and amounted to a breach of the contract. I charge you, gentlemen, that in a contract where a party employs another to render personal services, that it is the implied duty of the party so employing the other to render such services to cooperate with that party, and that it will be for you to consider in this case whether or not the plaintiffs were or were not prevented from performing the contract by the lack of cooperation, if any, on the part of the defendants. In order for the failure of the defendants to cooperate, if there was such, to be of a sufficient amount for the plaintiffs to quit and go no further under the contract, it would be necessary for such failure to cooperate, if there was such, to render it impossible for the plaintiffs to proceed." The complaint as to the quoted charge is that it was not authorized by the evidence.

A careful review of the evidence in the record discloses that there was sufficient proof that the defendants wrongfully prevented the plaintiffs from performing the contract to authorize the charge excepted to. The evidence referred to consisted in part of the testimony of one of the plaintiffs, Sykes H. Young: "In 1948, when this supplemental report was issued by the Treasury Department reducing the taxes; along about that time there was discussion about security transactions in California. There were discussions in regard to a good deal of bond transactions, primarily, I believe, with local political subdivisions. Mr. Irwin stated that they had had lots of transactions. Had

bought lots of bonds that were issued by these political subdivisions. Some of them, I believe, if I remember correctly, were local school districts and some perhaps were cities; maybe counties. But he urged that there were a good deal of those transactions, and we needed that information to determine the dollars and cents costs of those securities owned by him as of the end of each year for building up his net worth as of the end of each year for determining how much it increased during these years.

"We had—I don't remember how many letters—but a great deal more telephone calls than letters, urging Mr. Irwin to get this information for us from California because it was back of 1939, and some of it way back perhaps 20 years, or more, and we were trying to establish the fact that he was worth a great deal more money in the earlier years than the Government contended, and so it was an absolute essential, we felt, to the proper handling of his tax case.

"You asked me: 'Did you tell him that, or did you just feel that?' No, no; we told him that, on many occasions. A lot more times over the telephone than we did by corresponding. And we told him we would be glad to send someone out to California to get up this information for him, and of course we would have to charge him the per diem for our staff men, and would have to charge him traveling expenses. I think on one occasion he said he would go out and get it up himself. And then later he told us he had employed someone in California. He said he had employed a CPA that was going to work full time on it until he got it up for us. He volunteered the information as to the amount that he was paying him. Said it was $200.00 per month, to get up this information for us. We urged him to get it up because at that time the Internal Revenue agent in charge was becoming very insistent that the protest be filed and the case be pushed to a conclusion, because of so many other suits and things that were pending, perhaps as a result of the Winecoff Hotel fire.

"The protest to the supplemental letter wasn't filed because we weren't permitted to go out and get the information, and Mr. Irwin never did get us sufficient information to prepare the protest. We couldn't file it; an intelligent protest. 'That cer-

tainly was told to Mr. and Mrs. Irwin.

"You asked me: 'Did you or not ever say to Mr. or Mrs. Irwin before May 10, 1948 that you were just going to get out of the case because they just wouldn't give you any help or anything?' We never did tell them that we were going to get out of the case. I would like to qualify that last statement that I made. We never did unless you refer to this letter of May 10th as being such; 1948. That was brought on by the fact that we couldn't file the protest because Mr. Irwin wouldn't get us the information; or didn't."

Another criticism of the charge is that it was not adapted to the pleadings and issues in the case because a particular paragraph raising the issue to which it referred had been stricken on demurrer. It is true that the court did sustain a special demurrer to the paragraph of the petition in question, but in the order sustaining the demurrer provided that the plaintiffs would be allowed to amend to meet the objection raised by demurrer, and that, if they failed to so amend the paragraph, it would be stricken. The plaintiffs thereafter offered, and the trial court allowed, a material amendment to the paragraph; there was no objection to the allowance of the amendment, and the defendants did not renew their original demurrer. So the paragraph after amendment was "made whole," and sufficiently presented the issue to authorize the charge of which the defendants complain.

8. Ground 28 excepts to a similar charge on the identical grounds as in ground 27, and is without merit.

9. The first numbered assignment of error is that the court erred in overruling the defendants' general demurrers to an amendment adding count two of the petition, which originally consisted of only one count; and also assigns error on the overruling of several special demurrers directed to the various paragraphs of the amendment.

Another amendment was thereafter allowed, adding material averments to the amendment first filed, to which last amendment no objection was interposed and no renewal of the demurrer to the first amendment was presented. In these circumstances, the defendants must be held to have waived their demurrers attacking the first-mentioned amendment. *Hendrix* v. *Pirkle*, 208 *Ga.* 751 (69 S. E. 2d 267); *Howard* v. *Lee*, 208 *Ga.* 735 (1) (69

S. E. 2d 263). In the *Howard* case it is held: " 'A demurrer to an original petition does not, without more, cover the petition after it has been amended in material respects, but in such case the demurrer should be renewed, if it is still relied on.' *Livingston* v. *Barnett*, 193 *Ga.* 640 (19 S. E. 2d 385); *Hughes* v. *Purcell*, 198 *Ga.* 666 (32 S. E. 2d 392); *Peoples Loan Co.* v. *Allen*, 199 *Ga.* 537 (34 S. E. 2d 811); *Silverman* v. *Alday*, 200 *Ga.* 711 (38 S. E. 2d 419). Accordingly, the present exceptions to the rulings on demurrer do not present any question for decision."

10. The second numbered assignment of error in the bill of exceptions assigns error on the ruling in striking portions of paragraphs 2 and 13 of the defendants' answer. The portion of paragraph 2 stricken on demurrer reads: "Defendants do not deny that they are enrolled in one capacity or the other, but they aver that the privileges of accountants are not as extensive under the laws and regulations as those pertaining to attorneys at law. The latter may appear in the District Courts and Courts of Appeals of the United States which may not be done by accountants as such."

The portion of paragraph 13 of the answer stricken on demurrer reads: "Defendants show that as against said claim of $3,610.00 they had previously made a deposit of $7,500.00 which plaintiffs had appropriated without rendering any service in return therefor and they aver, therefore, that plaintiffs are indebted to defendants for the sum of $3,890.00, the unconsumed portion of said deposit of $7,500.00 even if the alleged services had been rendered—which defendants deny, as being an attempt to add to and vary the terms of the written contract, a copy of which is attached to the complaint, which specifically provides that the $7,500.00 was a retainer and not a deposit and that the per diem charges were in addition thereto."

The language contained in paragraph 2 of the answer was demurred to on the ground that it was irrelevant to the issues of the case. The position of the demurrant was well taken. The petition had set forth that the plaintiffs were licensed and permitted by law to render the service contemplated by their contract of employment, and further showed that members of the firm were lawyers and accountants. Consequently, it made

no difference whether the privileges of accountants were as extensive under regulations referred to as those of attorneys at law.

The portion of paragraph 13 of the answer was demurred to by the plaintiffs on the ground that it undertook to vary the terms of the written contract sued upon. The contract definitely provided for a retainer fee of $7,500, and that the plaintiffs be paid in addition thereto. The portion of the paragraph stricken undertook to set up that the retainer of $7,500 was paid to cover the per diem, and was subject to the criticism presented by the plaintiffs' demurrer. No error is shown by the second assignment of error.

11. In considering the assignments of error in the bill of exceptions 3 to 23 inclusive, it should be remembered that the trial was completed on October 9, 1953. A motion for new trial filed by the defendants was filed on the same date, and the bill of exceptions to the denial of the same was certified and filed on June 14, 1954. The assignments of error referred to complain of the trial judge's ruling on the admissibility of evidence and of his denial of the motions for mistrial made during the progress of the trial. When a motion for new trial is denied and an appeal taken to this court, every question properly raised by the motion for new trial, such as rulings on motions for mistrial and rulings on various other matters pertaining to the conduct of the trial, is presented for consideration here by assignments of error in the bill of exceptions on the judgment denying the motion for new trial. Such questions are not properly raised by assignments of error in a bill of exceptions. They can be raised only by a motion for new trial.

12. Assignments of error 24, 25, 26, 27, 28, and 29 complain that the court erroneously charged the jury and failed to give requested instructions to the jury. These questions were not properly raised by assigning in the bill of exceptions such rulings as error. The only way the question as to the correctness of these rulings could be raised was by motion for new trial.

13. Assignment of error 31 consists merely of a recital of facts without alleging that the court erred, and presents nothing for consideration.

14. Assignments 30 and 32 deal with matters disposed of in

this opinion in passing upon the grounds of the motion for new trial.

The judgment of the trial court is affirmed.

*Gardner, P. J., Townsend, Carlisle, and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. I dissent from the judgment because, under the facts of this case, the defendants were entitled to the use of the plaintiffs' worksheets, which contained information the defendants needed to contest the tax assessments if the plaintiffs insisted on full damages for the breach of the entire contract. The evidence is undisputed that the plaintiffs refused to permit the defendants to have the use of these work sheets, and it was necessary for the defendants' lawyers to do the work over. It does not comport with equity and good conscience, in my opinion, for the plaintiffs to withhold the benefit of the worksheets from the defendants and still be entitled to recover from them the entire damage for breach of the contract, which was the amount agreed to be paid, which covered the very benefits that were withheld. I think this is true even if the defendants were guilty of such lack of co-operation as would justify the plaintiffs in not going through with the contract. The plaintiffs are demanding that justice be done and that they be paid in full, and this they cannot do when they have withheld part of the consideration for which they are suing.