## S99A0368. BLIZZARD v. MONIZ et al.
### (518 SE2d 407)

HINES, Justice.

This is an appeal by defendant Blizzard from a judgment in favor of plaintiffs Moniz and Hammock in their action to remove a cloud upon the title to certain real property which Blizzard claims ownership to through a tax sale deed and the ripening of title under OCGA § 48-4-48 (1989).[1] Finding that the superior court correctly determined that the plaintiffs were not precluded from redeeming the property, we affirm.

The property in question consists of 23.929 acres on the west side of U. S. Highway 27 in Troup County. It was owned for more than 40 years by Lucy H. Hilderbrand, the plaintiffs' mother, until July 9, 1987, when she conveyed the property by warranty deed to Richard J. Fogal. Hilderbrand financed the sale, and on the same date, Fogal executed a purchase money deed to secure debt in regard to the property in favor of Hilderbrand. Both instruments were recorded in Troup County the following day, July 10, 1987. Hilderbrand continued to occupy the residence on the property for some time following

---

[1] OCGA § 48-4-48 (1989) provides:

(a) A title under a tax deed properly executed at a valid and legal sale prior to July 1, 1989, shall ripen by prescription after a period of seven years from the date of execution of that deed.

(b) A title under a tax deed executed on or after July 1, 1989, shall ripen by prescription after a period of four years from the date of execution of that deed.

(c) A tax deed which has ripened by prescription pursuant to any provision of this Code section shall convey, when the defendant in fi. fa. is not laboring under any legal disability, a fee simple title to the property described in that deed, and that title shall vest absolutely in the grantee in the deed or in the grantee's heirs or assigns. In the event the defendant in fi. fa. is laboring under any legal disability, the prescriptive term specified in this Code section shall begin from the time the disabilities are removed or abated.

(d) Notice of foreclosure of the right to redeem property sold at a tax sale shall not be required to have been provided in order for the title to such property to have ripened under subsection (a) or (b) of this Code section.

the sale, but then relocated and allowed her grandson to live there.

By a deed dated July 15, 1988, and filed and recorded in Troup County on July 19, 1988, Fogal conveyed varying undivided interests in the property to seven others, retaining for himself only an 8.54 percent undivided interest.[2] Subsequently, the 1990 Troup County ad valorem taxes on the property became in default. The original tax amount was $1,262.75 and was based on a fair market value of $148,070 as determined by the county tax assessor.[3] In 1991, the county tax commissioner attempted to collect the past due 1990 taxes by first issuing a fi. fa. against Fogal.[4] No fi. fa. issued against any of the other seven tenants in common of record. The tax commissioner then advertised and conducted a tax sale on June 4, 1991; the total tax amount with various penalties, interest and costs then due was $1,838.93. Defendant Blizzard was the high bidder at $2,000, and the tax commissioner executed a tax deed in favor of Blizzard which was filed and recorded on June 11, 1991. The legal description of the property in the tax deed differed from that contained in the warranty deed from Hilderbrand to Fogal.

In 1993, Blizzard attempted to foreclose any right of redemption regarding the property purchased at the tax sale, and notice of his intent to do so was published four times in the county organ. See OCGA § 48-4-45.[5] The description of the property in the notice was

---

[2] The conveyed interests were:

| | |
|---|---|
| A. P. E., Inc. | 14.780% |
| Dan-Ric, Inc. | 35.290% |
| John Beasley | 9.655% |
| Sumter M. Pendergrast | 5.590% |
| Thomas J. Pendergrast | 10.000% |
| Hazen H. Stevens, Jr. | 6.490% |
| Richard Lamar Wakefield | 9.655% |

[3] The court found that the property had a fair market value of at least $148,070 at all times relevant to this action.

[4] Most of the documents prepared by the county tax officials reflected the name *Fogel*.

[5] OCGA § 48-4-45 provides:

(a) After 12 months from the date of a tax sale, the purchaser at the sale or his heirs, successors, or assigns may terminate, foreclose, divest, and forever bar the right to redeem the property from the sale by causing a notice or notices of the foreclosure, as provided for in this article:

(1) To be served upon all of the following persons who reside in the county in which the property is located:

(A) The defendant in the execution under or by virtue of which the sale was held;

(B) The occupant, if any, of the property; and

(C) All persons having of record in the county in which the land is located any right, title, or interest in, or lien upon the property;

(2) To be sent by registered or certified mail to each of the persons specified in subparagraphs (A), (B), and (C) of paragraph (1) of this subsection who resides outside the county in which the property is located, if the address of that person is reasonably ascertainable; and

(3) To be published, if that tax sale occurs on or after July 1, 1989, in the news-

that contained in the tax deed. Although a deputy sheriff tacked a copy of the notice somewhere on the property, neither Hilderbrand, her grandson residing on the property, Fogal, nor any of the other tenants in common received notice personally or by mail.

In 1994, Fogal's debt to Hilderbrand went into default, and Fogal and the other tenants in common executed a deed in lieu of foreclosure in favor of Hilderbrand on March 31, 1994. The reconveyance was filed and recorded on December 4, 1994. Hilderbrand died in 1994, and by will the property was devised to her daughters, Moniz and Hammock. Hilderbrand's executor issued a deed of assent to Moniz and Hammock which was filed in October 1995, and they brought the present action in May 1996.

Following a bench trial, the Superior Court of Troup County found that it was unclear what portion of the property the tax commissioner intended to levy upon and sell or what property, if any, was sold; it was clear that at some point in time, at least as early as 1991, the taxing officials subdivided the property into two parcels for the purposes of assessing and billing taxes; one parcel consisted of approximately one acre and included the residence formerly occupied by Hilderbrand; the other parcel was the remaining 22 and a fraction acres; after the subdivision, the tax assessor determined the fair market value of the 22 plus-acre parcel to be $113,900; there was some evidence that the tax commissioner intended to sell at the tax sale only the 22 plus-acre parcel and not also the one acre on which the house was located; the tax deed itself further confused the issue; when the bearings and distances contained in the property description in the tax deed were scaled, they did not close, and thus, did not describe any tract of land; the tax deed did not contain any reference to any other plat, any survey or any deed; there was no mention of the number of acres being conveyed nor was there sufficient reference to natural monuments or boundaries or bounding property owners to be able to ascertain what was intended to be conveyed; the manner in which the taxes were billed following the tax sale was perplexing; despite the 1991 tax sale to Blizzard, at no time had the taxes for either parcel been billed in Blizzard's name; following the

paper in which the sheriff's advertisements for the county are published in each county in which that property is located, which publication shall occur once a week for four consecutive weeks in the six-month period immediately prior to the week of the redemption deadline date specified in the notice.

(b) Nothing contained in this Code section shall be construed to require that any notice be sent to or served upon any person whose right, title, interest in, or lien upon the property does not appear of record in the county in which the land is located.

(c) The heirs of any deceased owner of any land entitled to notice pursuant to this Code section shall be served by the sheriff or notified as provided in this article.

tax sale, the taxes on both parcels were assessed and billed in the name of one of the 1988 tenants in common until 1995 when the taxes on the one-acre parcel were assessed and billed in the name of Hilderbrand's estate; Blizzard never occupied any part of the property or ever engaged in any act evidencing possession or claim of ownership except for the payment of a portion of the imposed taxes; Hilderbrand never had any knowledge of the tax sale; and the plaintiffs did not have actual knowledge of the tax sale until early 1996. Ultimately, the court concluded that the tax deed itself was invalid because the property description therein was too indefinite and the levy excessive; Blizzard failed to foreclose the right of redemption because he did not comply with the notice requirements of OCGA § 48-4-45; and title under the tax deed did not ripen by prescription under OCGA § 48-4-48 (1989) because Blizzard was never in possession of the property. The court ordered that Moniz and Hammock might redeem the property by paying $9,252.21[6] to Blizzard in exchange for Blizzard's immediate execution and delivery of a quitclaim deed conveying all of his interest in the property to them.

Blizzard contends that the court erred because OCGA § 48-4-48 acts as a statute of limitation, that his title to the property ripened after four years from the date of execution of the tax deed, and consequently, the plaintiffs' right to redeem the property was statutorily foreclosed. But the contention is unavailing.

First, for the reasons cited by the superior court, the sufficiency of the tax deed itself and the extent of the levy are at issue. But even accepting, for the sake of argument, the validity of the tax sale to Blizzard, the undisputed circumstances show that the plaintiffs' right to redeem the property was not barred by either the giving of notice under OCGA § 48-4-45 or the ripening of title by prescription under OCGA § 48-4-48 (1989).

Whenever real property is sold due to an execution for the collection of state, county, municipal, or school taxes or for special assessments, the defendant in fi. fa. or one with any right, title, or interest in or lien upon the property may redeem it within 12 months from the date of the sale or at any time after the sale until the right to redeem is foreclosed by the giving of notice as provided in OCGA § 48-4-45. OCGA § 48-4-40; *Southerland v. Bradshaw*, 252 Ga. 294, 295 (1) (313 SE2d 92) (1984).

[T]he enforcement and collection of taxes through the sale of the taxpayer's property has been regarded as a harsh procedure, and, therefore, the policy has been to favor the rights

---

[6] The court found this amount as undisputed as necessary to redeem the property.

of the property owner in the interpretation of such laws. Since the policy has been to favor the property owner . . . provisions permitting the owner to redeem his property are liberally construed to accomplish their objectives.

*Wallace v. President Street,* 263 Ga. 239, 240 (1) (430 SE2d 1) (1993), quoting 3A Sutherland Stat. Const., § 66.08 (4th ed.). See also *Union Central Life Ins. Co. v. Bank of Tignall,* 182 Ga. 233 (185 SE 108) (1936). Therefore, one seeking to bar redemption under OCGA § 48-4-45 must comply with its notice requirements. Blizzard did not do so.

Thus, the remaining question is whether the right to redeem was foreclosed by the statutory ripening of Blizzard's title. And the answer is no. OCGA § 48-4-48 (b) (1989), applicable to this case, provides that title "shall *ripen by prescription* after a period of four years from the date of execution of [a tax deed executed on or after July 1, 1989]." (Emphasis supplied.) As stated in OCGA § 44-5-160, title acquired by prescription requires continuance of *possession* for a period of time fixed by law. Therefore, the plain language of OCGA § 48-4-48 (1989)[7] requires such adverse possession by the tax deed grantee in order for title to ripen under the statute. See Justice Carley's special concurrence in *Moultrie v. Wright,* 266 Ga. 30, 33 (464 SE2d 194) (1995). Compare *Moultrie* and *Patterson v. Florida Realty &c. Corp.,* 212 Ga. 440, 443 (3) (93 SE2d 571) (1956), decided under prior law. It is uncontroverted that Blizzard never occupied the property, nor committed any acts or exhibited any conduct which would amount to adverse possession of the property for the requisite period. See OCGA § 44-5-161.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 3, 1999.

*Daniel W. Lee,* for appellant.
*Hoke J. Thomas, Jr.,* for appellees.

---

[7] The statute was further amended in 1996. The 1996 amendment, effective July 1, 1996, in subsection (b), inserted "but before July 1, 1996," in the first sentence and added as a second sentence, "A title under a tax deed properly executed on or after July 1, 1996, at a valid and legal sale shall ripen by prescription after a period of four years from the recordation of that deed in the land records in the county in which said land is located."