## S07A0523. MARATHON INVESTMENT CORPORATION v. SPINKSTON et al.
### (644 SE2d 133)

CARLEY, Justice.

At a tax sale, Marathon Investment Corporation (MIC) was the successful bidder for a vacant lot located at 321 Hills Avenue in Atlanta and a tax deed was executed and delivered. The owners of the parcel and defendants in fi. fa. were listed as Janet Spinkston and Roxie Taylor, in their representative capacities as trustees for the Hills Avenue Baptist Church (Church). At the time of the sale, the Church was an unincorporated religious association. The Church sanctuary and the subject property were separated by the main parking lot for the parishioners' vehicles. The parcel at 321 Hills Avenue was used for overflow parking.

A year after receiving the tax deed, MIC filed notice of foreclosure of the right to redeem the property. Ms. Spinkston and Ms. Taylor (Trustees) were personally served, but neither they nor the Church tendered the redemption price to MIC. Thereafter, MIC initiated this quiet title action. The Trustees answered, and asserted that, because the property actually belonged to the Church, it was tax-exempt and that the tax sale was, therefore, void or voidable. The proceeding was heard by a special master, who found in favor of the Trustees. The superior court approved and adopted the special master's report, vesting title in Trustees and declaring the tax sale void. MIC appeals from the superior court's order.

1. OCGA § 48-5-41 (a) (2.1) (A) provides that "[a]ll places of religious worship" are exempt from ad valorem taxes. "[T]he words 'religious worship' import a concept of a congregation assembling in a place open to the public to honor the Deity through reverence and homage." *Leggett v. Macon Baptist Assn.*, 232 Ga. 27, 30 (II) (205 SE2d 197) (1974). 321 Hills Avenue is the site of the Church's auxiliary parking lot, not its actual sanctuary. However, OCGA § 48-5-41 (a) (2.1) (A) is phrased in inclusive general terms of "all places of religious worship," and does not

> employ the terms "house" or "church" of religious worship, which, arguably, might have limited it to a building. If the *presence* of the omnipotent and omnipresent God cannot be restricted to a mere man made edifice, surely it was not intended to limit the *worship* of such a God to a building. . . . Even in cases relating primarily to exemptions for "buildings" of colleges, this [C]ourt has held that "the exemption embraces the land adjacent thereto necessary for their proper use, occupancy, and enjoyment." [Cits.] (Emphasis in original.)

*Roberts v. Atlanta Baptist Assn.*, 240 Ga. 503, 508-509 (241 SE2d 224) (1978). Certainly, the proper use, occupancy and enjoyment of places of religious worship can require that accommodation be provided for the vehicles of the members of the attending congregation.

There does not appear to be any dispute that the Church's primary parking lot, which is located between the sanctuary and the subject parcel, is exempt from taxes. Thus, "[t]he evidence in the case sub judice showed that the two contiguous tracts [to that where the sanctuary was located] were principally or even exclusively used as a 'place of religious worship.' " *Roberts v. Atlanta Baptist Assn.*, supra at 509. It follows that "[t]he vacant lot here involved was, for reasons indicated above, properly held exempt from taxation." *Elder v. Trustees of Atlanta Univ.*, 194 Ga. 716, 720 (1) (22 SE2d 515) (1942).

2. Prior to the tax sale, the Trustees did not contest the tax assessment and claim tax exempt status for the parcel. However, the evidence also shows that the opportunity to do so was never provided, because all tax notices for 321 Hills Avenue were sent to an address on Cascade Road at which neither of them had ever resided. Moreover, the Church pastor testified that no past or present member of the congregation had ever lived at the address to which the tax notices were sent. There was no evidence that, after the notices sent to Cascade Road proved ineffective, any additional effort was made to locate the Trustees, even though their names and correct addresses were listed in the telephone directory. Thus, the special master was authorized to make the following finding:

> Practically speaking this Church had absolutely no notice that taxes were due. The notices did not go to an address known by any witness. . . . The Church itself was tax exempt with the exception of charges for trash collection and sewage which were billed and paid. The result is that the Church had no opportunity to either dispute or pay the taxes and the Church's right to due process to object to the taxes (or even to pay the taxes) was denied when it received no notice.

"[D]efects in following the notice provisions of the tax sale statute may give an injured party a claim for damages, but will not render the tax sale or the deed therefrom void. [Cit.]" *GE Capital Mortgage Services v. Clack*, 271 Ga. 82, 83 (1) (a) (515 SE2d 619) (1999). However, the circumstances here show more than a mere "defect" in providing a taxpayer with notification of a sale to be conducted for the failure to pay taxes assessed on property that is unquestionably taxable. Compare *GE Capital Mortgage Services v. Clack,* supra; *Haden v. Liberty Co.*, 183 Ga. 209, 210 (1) (188 SE 29) (1936); *Harper v. Foxworthy*, 254 Ga. App. 495, 497 (1) (562 SE2d 736) (2002). What

is involved is property which is otherwise tax-exempt, coupled with the lack of notification to the owner so that the tax records can be corrected and the proper exemption can be claimed. Under those circumstances, the "defect" is potentially of constitutional magnitude. "Constitutional due process of law includes notice and hearing as a matter of right where one's property interests are involved. [Cit.]" *Hamilton v. Edwards*, 245 Ga. 810, 811 (267 SE2d 246) (1980).

> "(T)he enforcement and collection of taxes through the sale of the taxpayer's property has been regarded as a harsh procedure, and, therefore, the policy has been to favor the rights of the property owner in the interpretation of such laws. . . ." [Cits.]

*Blizzard v. Moniz*, 271 Ga. 50, 53-54 (518 SE2d 407) (1999). That policy of favoring the rights of the owner is certainly no less applicable where, as here, the taxes that were collected pursuant to the sale were unauthorized because the property was exempt from taxation. As a practical matter, the owner of taxable property will generally have at least constructive or implied notice that taxes will be assessed and that, unless they are paid, the parcel may be sold. However, that is in stark contrast to the present circumstances in which, as found by the special master, "it is uncontroverted that neither [Trustee] expected a tax billing statement as the [s]ubject [p]roperty was thought to be tax exempt due to its use solely by the Church."

> Notice is defined as "information; the result of observation, whether by senses or the mind; knowledge of the existence of a fact or state of affairs; the means of knowledge." [Cit.] We cannot conclude that the [Trustees] had either information, observation, knowledge or means of knowledge prior to the receipt of the notice [that taxes had been assessed on Church property].

*Hamilton v. Edwards*, supra. However, that notice was never received.

> [A]n interested party is entitled to notice which is reasonably calculated, under all of the circumstances, to apprise him of the pendency of a tax sale. [Cits.] . . . [T]he current constitutional standard . . . is that the notice must be sent to those interested parties whose names and addresses are ascertainable by "reasonably diligent efforts." [Cits.]

*Hamilton v. Renewed Hope*, 277 Ga. 465, 467 (589 SE2d 81) (2003). Because the Trustees were never given that requisite notice, their due process rights were violated by the tax sale and the deed to MIC resulting from that unconstitutional sale is, therefore, void.

3. MIC urges that the Trustees lack standing to contest the tax sale because they did not tender the amount of unpaid taxes for which the property was sold. However, the requirement that the redemption price be tendered before the validity of a tax deed can be challenged does not apply if "it clearly appears that . . . [t]he tax or special assessment for the collection of which the execution under or by virtue of which the sale was held was not due at the time of the sale. . . ." OCGA § 48-4-47 (b) (1). That exception to the tender requirement is applicable here, since taxes were not due at the time the property was sold because of its tax-exempt status.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 24, 2007.

*Perrie, Bone & Burr, C. Terry Blanton, Amelia T. Phillips*, for appellant.

*Luann M. Evans, Jennesia M. Primas, William A. Castings, Jr.*, for appellees.