A09A0339. E. I. DuPONT DE NEMOURS & COMPANY et al. v. WATERS.
(681 SE2d 651)

BERNES, Judge.

Following our grant of its application for interlocutory appeal, E. I. DuPont de Nemours & Company appeals from the denial of its motion for reconsideration of the superior court's order appointing a special master to oversee discovery. DuPont argues that the superior court erred in appointing a special master because there is no authority under Georgia law for a superior court to delegate its duties to perform the pretrial and other case management functions as contemplated by the order. Alternatively, DuPont contends that if the superior court was authorized to delegate certain pretrial and case management duties to a special master, the scope of powers delegated to the special master exceeded that authority. We conclude

---

that although the superior court had the authority to appoint a special master to rule on issues of fact and law in pretrial discovery under OCGA § 9-7-1 et seq., the superior court's order contains provisions which are not consistent with that statutory scheme. Accordingly, we reverse the superior court's order denying DuPont's motion for reconsideration, vacate its order appointing the special master, and remand the case so that the superior court may enter an order consistent with OCGA § 9-7-1 et seq.

Plaintiff Dennis A. Waters, Jr., on behalf of himself and others similarly situated, brought this class action lawsuit against DuPont and Liberty Mobile Home Supply, Inc. Waters claimed that DuPont and Liberty had fraudulently marketed Delrin, an acetyl resin, by misrepresenting its suitability to connect lengths of polybutylene pipes. In response to Waters's request for production, DuPont provided Waters with CD-ROMs containing approximately 2.2 million pages of documents. DuPont also provided Waters with two privilege logs, the first containing 2,837 entries and the second containing 58 entries.

Waters moved the superior court to order an in camera review of the documents contained in DuPont's privilege log under whatever terms and conditions the court deemed appropriate. The superior court held a hearing on the pending discovery issues. Following the hearing, Waters asked the superior court to appoint a special master to review the privilege logs and underlying documents. DuPont opposed these motions.

The superior court subsequently issued an order appointing a special master. The order, which did not purport to be pursuant to any specific statutory authority, defined the special master's duties and compensation, the conduct of the parties in relation to the special master, and an appeals process. More specifically, the order authorized the special master to "establish case management orders and discovery schedules, and otherwise perform such acts necessary to expeditiously and efficiently move the case through the discovery process." The order also provided that the special master could entertain pending and future discovery motions, issue rulings on the motions, and impose sanctions on any party for failure to comply with discovery requirements. The order further authorized the special master to charge $300 an hour for his services, allocated among the parties as the special master deemed appropriate. Finally, the order allowed the parties to make de novo appeals to the superior court from rulings of the special master. During the pendency of such appeals, absent the express order of the special master, the parties were required to comply with the special master's rulings.

On appeal, DuPont argues that, although Georgia law contemplates the appointment of special masters in condemnation cases,

quiet title actions, and in connection with attorney discipline proceedings, there is no statutory authority allowing a superior court to delegate its pretrial and case management duties to a special master in this case. See OCGA §§ 22-2-100 et seq. (condemnation); 23-3-63 (quiet title proceedings); Rule 4-106 of the Georgia Rules of Professional Conduct (disciplinary proceedings involving attorney misconduct).[1] In contrast, Waters argues that the superior court was authorized to appoint the special master in light of OCGA § 9-7-1 et seq., as well as pursuant to the powers inherent to the superior court.

1. OCGA §§ 9-7-1 through 9-7-23 provide for the appointment of auditors and the performance of their duties.[2] OCGA § 9-7-2 states:

> Upon application of either party, after notice to the opposite party, the judge of the superior court, in equitable proceedings if the case shall require it, may refer any part of the facts to an auditor to investigate and report the result to the court. Furthermore, the judge may, upon his own motion, when in his judgment the facts and circumstances of any such case require it, refer the same to an auditor.

See *Mayor &c. of Gainesville v. Jaudon*, 145 Ga. 299, 304 (89 SE 210) (1916). Under OCGA § 9-7-2, the superior court is authorized to appoint an auditor in cases where the plaintiff invokes the court's equitable powers by praying for an injunction or other form of equitable relief.[3] See *Ruskin v. AAF-McQuay, Inc.*, 284 Ga. App. 49, 53 (2) (643 SE2d 333) (2007). See also *Candler v. Bryan*, 189 Ga. 851, 855 (1), 857-858 (2) (8 SE2d 81) (1940) (holding that appointment of auditor was authorized and that prayer for injunction "alone made the case one in equity"). Once appointed under OCGA § 9-7-2, an auditor has the power to hear motions, pass on questions of law and fact, and compel the production of documents. See OCGA § 9-7-6.

---

[1] Although Rule 53 (a) (1) (C) of the Federal Rules of Civil Procedure contemplates the appointment of a special master to address pretrial matters that cannot be effectively and timely addressed by an available district or magistrate judge, Georgia has no corresponding provision in its Civil Practice Act. In this respect, OCGA § 9-11-53 has been reserved by the General Assembly.

[2] The term "auditor," for purposes of the statute, is broad enough to include "special master." See OCGA § 9-7-1 ("[t]he duties heretofore performed by a master in the superior court shall be performed by an auditor"). The superior court's use of the term "special master" is not legally dispositive.

[3] Some of our cases have suggested that the statutory power of the superior court to appoint an auditor extends more generally to "any case, at law or in equity." *Mobley v. Faulk*, 42 Ga. App. 314, 316 (156 SE 40) (1930). See also *Stapleton v. Sky Valley*, 184 Ga. App. 818 (1) (363 SE2d 48) (1987); *Chandler v. Merchants &c. Nat. Bank*, 30 Ga. App. 694 (118 SE 785) (1923).

"Whether an auditor shall be appointed is, as a general rule, in the discretion of the court; and unless there has been an abuse of such discretion, the appointment by the court of an auditor will not be disturbed." *Ten-Fifty Ponce de Leon Co. v. C & S Nat. Bank*, 170 Ga. 642, 647 (153 SE 751) (1930). See *Mobley v. Faulk*, 42 Ga. App. 314, 316 (156 SE 40) (1930).

Applying these principles, we conclude that the superior court did not err by appointing an auditor, termed a special master, under the circumstances of this case. Waters's complaint prayed for equitable relief, including the imposition of injunctions and a constructive trust. The superior court, therefore, was entitled to invoke its powers to appoint an auditor under OCGA § 9-7-2. See *Ruskin*, 284 Ga. App. at 53 (2). And given the factual complexity of this dispute, the discretion afforded superior courts to appoint an auditor if circumstances require it, and the broad powers afforded by statute to an auditor once appointed, the superior court acted within its discretion in delegating authority to an auditor to report on the discovery portion of the case, to hear motions in connection with discovery matters, and to pass on questions of law and fact in relation to discovery.[4]

Nevertheless, the superior court's appointment order, as written, does not comply with OCGA § 9-7-1 et seq. Significantly, the statutory scheme provides for a detailed process in which the auditor is required to file a report, which then may be subject to exceptions of law or fact by either party within 20 days of the filing of the report. OCGA §§ 9-7-8, 9-7-14 (a). The appointment order, however, does not contemplate a report and the filing of exceptions, but rather a procedure of de novo appeals from the special master's rulings, with the parties being bound to those rulings during the pendency of such appeals. Other inconsistencies with the statutory scheme include the matter of the special master's fees, which the superior court leaves to the special master to allocate "among the parties as the [s]pecial [m]aster deems appropriate." But OCGA § 9-7-22 provides that fees, which are to be assessed as court costs, "shall be determined and fixed by the trial judge" and apportioned among the parties at the discretion of the judge. The appointment order also allows the

---

[4] It appears that special masters have been so employed in complex discovery disputes not inconsistently with OCGA § 9-7-1 et seq. See *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334, 349 (3) (b) (537 SE2d 397) (2000), vacated by *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 534 U. S. 801 (122 SC 24, 151 LE2d 1) (2001), reinstated with the exception of Division (6) (c), *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 254 Ga. App. 598, 599 (563 SE2d 178) (2002) (referencing trial court's adoption of special master's findings and recommendations regarding discovery dispute). *Franklin v. Franklin*, 267 Ga. 82, 83-84 (1) (475 SE2d 890) (1996), to the extent that it stands for the proposition that an auditor should not be appointed to pass on facts which must be decided by a jury, would not apply to a discovery dispute.

YALE LAW LIBRARY

special master to impose sanctions on the parties, a matter which is not specifically contemplated by the statutory scheme, which expressly reserves matters of contempt for the trial judge. See OCGA § 9-7-6. Given these inconsistencies, although we conclude that it was within the superior court's discretion to appoint a special master to investigate and report on matters of pretrial discovery, the superior court's order denying DuPont's motion for reconsideration must be reversed and its appointment order vacated. On remand, the superior court may enter a new order appointing a special master in compliance with the specific requirements of OCGA § 9-7-1 et seq.

2. Waters also contends that even if OCGA § 9-7-1 et seq. did not authorize the appointment of a special master to oversee discovery, the superior court had authority to do so under its inherent powers. We are sympathetic to this argument in light of the size, expense, and complexity that often is involved in modern civil litigation. Nonetheless, in view of our conclusion in Division 1 that OCGA § 9-7-1 et seq. authorized the superior court to appoint a special master for overseeing discovery in this case, we need not reach this issue.

*Judgment reversed and case remanded with direction. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 9, 2009 — 

*Ellis, Painter, Ratterree & Adams, Paul W. Painter, Jr., Sarah B. Akins*, for appellants.

*Osteen & Osteen, Christopher J. Osteen, Stephen A. Sael, Jeffery L. Arnold, Richard H. Middleton, Jr., H. Craig Stafford, Alvin G. Wells, Jr.*, for appellee.