## S16A0913. NIX v. 230 KIRKWOOD HOMES, LLC.
### (793 SE2d 402)

MELTON, Justice.

On March 25, 2015, 230 Kirkwood Homes, LLC ("Kirkwood Homes") filed an action seeking declaratory judgment and quiet title relief, asserting that it was the owner of a property located at 000 Kirkwood (the "Property"). Geraldine Nix opposed the action by Kirkwood Homes, claiming to be the owner of the Property. Following proceedings before a special master and the Superior Court of DeKalb County, the superior court issued a final order on September 30, 2015, concluding that Kirkwood Homes was the fee simple owner of the Property. Nix appeals from this ruling, and, for the reasons that follow, we affirm.

By way of background, pursuant to a December 7, 1993 tax sale, DeKalb County sold the Property, which was owned at that time by Dorothy Kelly. DeKalb County ultimately purchased the Property at the tax sale as the highest bidder. It is undisputed that DeKalb County did not foreclose the redemption rights to the Property after the tax sale in accordance with OCGA § 48-4-45 or OCGA § 48-4-48. On February 25, 1999, DeKalb County conveyed its tax deed to Nix, and Nix conveyed her tax deed, via a deed to secure debt, to Bank of America. However, this deed to secure debt was canceled in 2009, and the tax deed reverted back to Nix on May 6, 2009.

On January 20, 2003, Kelly, the owner of the Property prior to the tax sale, transferred her interest in the Property to Community Renewal and Redemption, LLC ("CRR"). On February 20, 2003, CRR filed suit seeking a declaration that it was the owner of the Property by virtue of having tendered the statutory redemption amount to Nix.

However, Nix claimed that she had acquired full fee simple title to the Property, under OCGA § 48-4-48, by virtue of the passage of four years since the time of execution of the tax deed.

The litigation between CRR and Nix lasted for several years, and the case came before this Court on two occasions. See *Community Renewal and Redemption v. Nix*, 279 Ga. 840 (621 SE2d 722) (2005) ("*Community I*") (reversing grant of summary judgment to Nix because the trial court erred by holding that title vested in DeKalb County by virtue of the passage of time, thereby foreclosing CRR's effort to redeem title) and *Community Renewal and Redemption v. Nix*, 288 Ga. 439 (704 SE2d 759) (2011) ("*Community II*") (affirming trial court's dismissal of CRR's case against Nix where, although CRR tendered the redemption price to Bank of America (the security deed holder on the Property) *after* filing its lawsuit against Nix, CRR had failed to tender the redemption price to Bank of America *before* filing its action against Nix to redeem the property). Following this Court's affirmance of the trial court's dismissal of CRR's case against Nix in *Community II*, on May 10, 2011, CRR transferred its interest in the Property to Belfare, LLC ("Belfare").

On May 1, 2013, Belfare tendered $70,000 to Nix to redeem the Property, but Nix rejected tender of the redemption amount. On February 4, 2015, Belfare transferred its interest in the Property to Kirkwood Homes. On March 5, 2015, Kirkwood Homes tendered $75,000 to Nix in order to redeem the Property along with a redemption quitclaim deed for Nix to execute and return to Kirkwood Homes. Nix refused to accept the tender and refused to execute the redemption quitclaim deed.

On March 25, 2015, Kirkwood Homes filed the instant action seeking declaratory judgment and quiet title relief. The trial court appointed a special master, and both Kirkwood Homes and Nix filed motions for summary judgment. The special master and trial court concluded that Nix had never foreclosed the right of redemption of her tax deed pursuant to OCGA §§ 48-4-45 and 48-4-46, and that she had not gained ownership of the Property by prescription or adverse possession. The special master and trial court further concluded that Nix waived tender of the redemption amount by rejecting tender, and by refusing to provide a payoff amount. Furthermore, the special master and trial court concluded that Kirkwood Homes was the owner of the Property from the chain of title emanating from Kelly, the original owner, and that, by tendering the redemption amount, Kirkwood Homes had successfully redeemed the Property and was now the fee simple owner. Finally, the special master and trial court found that Nix was the only party with any interest in the subject tax deed at the time Kirkwood Homes tendered the redemption amount

and at the time that Kirkwood Homes filed its action, in that the prior security deed in favor of Bank of America encumbering the tax deed had been cancelled of record as of 2009. Accordingly, Kirkwood Homes' pre-litigation tender was sufficient.

1. Before moving to the substantive merits of this appeal, we must first address Kirkwood Homes' motion to dismiss the appeal, in which it contends that this Court lacks jurisdiction because Nix did not pay the fees of the special master below before filing her appeal. *Davis v. Harpagon Co., LLC*, 300 Ga. App. 644 (686 SE2d 259) (2009). We disagree.

In *Davis*, the Harpagon Company, LLC ("Harpagon"), purchased at a tax sale a property formerly owned by Davis. Harpagon filed a petition to quiet title pursuant to OCGA § 23-3-40 of the Quiet Title Act (OCGA § 23-3-40 et seq.) to obtain the property, and a special master was appointed to preside over the matter. Following a decision from the special master and a series of appeals, Harpagon eventually prevailed in obtaining a writ of possession for the subject property, and the trial court assessed over $17,000 in special master fees against Davis. Prior to paying the special master fees, however, Davis filed an appeal. On appeal, the Court of Appeals relied on statutes that relate to "auditors" being considered to be special masters, and ignored the specific statutes of the Quiet Title Act relating to the appointment and payment of special masters, to find that Davis' failure to pay the special master fees before filing her appeal required that the appeal be dismissed. In reaching this conclusion, the Court of Appeals reasoned:

> OCGA § 9-7-22 (c) provides that the "fees of the auditor shall be assessed as court costs and shall be paid prior to the filing of any appeal from the judgment of the court. . . ." "The term 'auditor,' for purposes of the statute, is broad enough to include 'special master.' " *E.I. DuPont de Nemours & Co. v. Waters*[, 298 Ga. App. 843, 845 (1), n. 2 (681 SE2d 651) (2009)]. See OCGA § 9-7-1 ("[t]he duties heretofore performed by a master in the superior court shall be performed by an auditor"). Under OCGA § 9-7-22 (c), the requirement to pay the assessed auditor fees before filing an appeal "is mandatory and jurisdictional." *Sorrentino v. Boston Mut. Life Ins. Co.*[, 206 Ga. App. 771, 772 (2) (426 SE2d 594) (1992)]. . . . Accordingly, Davis's appeal is hereby dismissed. See id.

Id. at 646 (1).

We find the Court of Appeals' reasoning to be flawed. As an initial matter, the special master was appointed pursuant to the Quiet Title

Act (see OCGA §§ 23-3-43 and 23-3-63), which is entirely separate from the Code provisions relating to the appointment of auditors under Title 9 of the Georgia Code. See OCGA §§ 9-7-2 and 9-7-3. The Quiet Title Act has its own, self-contained set of provisions for the appointment of special masters that are separate and apart from those relating to the appointment of auditors under Title 9. Furthermore, whereas OCGA § 9-7-22 (c) requires that the fees of an auditor "shall be paid prior to the filing of any appeal from the judgment of the court[,]" there is no such stated requirement in the Quiet Title Act with respect to the payment of fees for a special master appointed under the terms of that Act. Indeed, OCGA § 23-3-68 merely states:

> The court shall fix a reasonable compensation, not less than $50.00, to be paid to the master appointed under this part and shall fix the compensation to be paid to any representative in the nature of a guardian ad litem appointed under this part. These fees are to be taxed in the discretion of the court as a part of the costs.

Because there is no provision in the Quiet Title Act expressly stating that a special master's fees must be paid before a party may file an appeal from the judgment of the trial court in a quiet title action, we find no basis to read into the Quiet Title Act any legislative intent to require the payment of special master fees before a party may file an appeal from a trial court's judgment. See, e.g., *Higdon v. Gates*, 238 Ga. 105, 106 (231 SE2d 345) (1976) (where specific statute under Quiet Title Act contained "no provision for filing exceptions to the special master's report, the failure to file exceptions [was] not cause for dismissal of the appeal").

Accordingly, we find that the provisions of OCGA § 9-7-22 (c) requiring the payment of auditors' fees prior to the filing of an appeal do not apply to special masters appointed under the Quiet Title Act. Therefore, we deny Kirkwood Homes' motion to dismiss this appeal. See *Higdon*, supra. To the extent that the Court of Appeals' holding in *Davis* can be read to apply to unpaid fees related to special masters specifically appointed under the Quiet Title Act, it is hereby overruled.[1]

2. Moving on to the merits of this appeal, Nix first contends that Kirkwood Homes' quiet title action is barred by res judicata or

---

[1] By this ruling, we offer no judgment at this time as to whether the Court of Appeals's opinion is correct with respect to the appellate consequences of the failure to pay an auditor's fees pursuant to OCGA § 9-7-22 (c).

collateral estoppel. More specifically, Nix asserts that, because this Court held in *Community II*, supra, that CRR (one of the Kirkwood Homes' predecessors-in-interest) did not properly tender the redemption price for the Property to Bank of America prior to filing its lawsuit to redeem the Property, Kirkwood Homes is now barred from pursuing its own quiet title action. Nix is incorrect.

At the time that CRR initiated its action to redeem the Property in 2003, Bank of America held all of Nix's interest in the Property through a security deed, and CRR was therefore required to pay the redemption price for the Property to Bank of America as a prerequisite to initiating its action. See *Community II*, supra, 288 Ga. at 442 (2) (b). See also OCGA § 48-4-40. However, CRR's failure to meet this prerequisite, which resulted in the dismissal of its action without the merits of the case being reached, would do nothing to bar a proper tender of the redemption price to initiate a future lawsuit. See, e.g., *Douglas v. Douglas*, 238 Ga. 452, 454 (233 SE2d 195) (1977) (involuntary dismissal of action could not act as res judicata where dismissal was "one in which the merits could not have been reached because of the failure of the plaintiff to satisfy a precondition, and the dismissal was accordingly without prejudice").

In this regard,

> a former judgment binds only as to the facts in issue and events existing at the time of such judgment, and does not prevent a re-examination even of the same questions between the same parties, if in the interval the material facts have so changed or such new events have occurred as to alter the legal rights or relations of the litigants[.]

*Durham v. Crawford*, 196 Ga. 381, 387 (4) (26 SE2d 778) (1943).

Thus, a dismissal based on an improper tender would only be binding as to the facts and events that existed at the time of *that* dismissal, and would not bar a future action where, as here, the material facts have changed and new events have occurred that significantly alter the relations of the litigants. Specifically, Bank of America's security deed to the Property no longer exists, as the deed was canceled in 2009, and Nix has been left as the only party to whom the redemption price must be paid for a new redemption action to move forward. Nix has not foreclosed the right of redemption, which has allowed for other entities with an interest in the Property to come forward and pay the redemption price to Nix to pursue a redemption action. See OCGA § 48-4-40 (2) ("[T]he defendant in fi. fa. or any person having any right, title, or interest in or lien upon [the subject] property may redeem the property from the sale by the payment of

the amount required for redemption . . . [a]t any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45"). Indeed, if CRR had not transferred its interest in the Property to another entity, res judicata would not have barred it from initiating a new redemption action by paying the redemption price for the property to Nix under these changed circumstances. See *Durham*, supra, 196 Ga. at 387 (prior judgment "does not prevent a re-examination even of the same questions between the same parties, if in the interval the material facts have so changed or such new events have occurred as to alter the legal rights or relations of the litigants"). As there would have been no bar to CRR pursuing a new redemption action for the Property after this Court's decision in *Community II*, there is similarly no bar to Kirkwood Homes — an entirely separate entity from CRR — pursuing its right of redemption by tendering the redemption price for the Property to Nix. See *Douglas*, supra; *Durham*, supra.

3. Nix further asserts that the trial court erred in concluding that Kirkwood Homes was the fee simple owner of the Property rather than Nix. We disagree.

Because Nix never foreclosed the right of redemption to the Property pursuant to OCGA § 48-4-45, the only way that Nix could have obtained title to the Property was through prescription by adversely possessing the Property for four consecutive years. See OCGA § 48-4-48 (b) ("A title under a tax deed executed on or after July 1, 1989, but before July 1, 1996, shall ripen by prescription after a period of four years from the execution of that deed"); *Blizzard v. Moniz*, 271 Ga. 50, 54 (518 SE2d 407) (1999) ("[T]itle acquired by prescription requires continuance of possession for a period of time fixed by law. Therefore, the plain language of OCGA § 48-4-48 . . . requires such adverse possession by the tax deed grantee in order for title to ripen under the statute") (footnote omitted).

> In order for possession to be the foundation of prescriptive title, it: (1) Must be in the right of the possessor and not of another; (2) Must not have originated in fraud . . . ; (3) Must be public, continuous, exclusive, uninterrupted, and peaceable; and (4) Must be accompanied by a claim of right. . . . Permissive possession cannot be the foundation of a prescription until an adverse claim and actual notice to the other party.

OCGA § 44-5-161. Nix has not shown such adverse possession.

As an initial matter, as this Court concluded in *Community II*, supra, Nix conveyed her entire interest in the Property to Bank of

America in February 1999, which interest the bank held until May 2009. See id. at 442 (2) (b). Contrary to the notion that Nix's action in conveying her interest in the property showed that she possessed the Property for purposes of obtaining title by prescription, the opposite is true. Indeed, by conveying all of her interest in the Property under the tax deed to Bank of America, Bank of America, and not Nix, became the proper party to be paid the redemption price for the tax deed for anyone who wanted to redeem the Property.[2] See id. Nix could not claim to any interest in the Property *under the tax deed* from February 25, 1999 to May 6, 2009, which means that she could not have availed herself of the provisions of OCGA § 48-4-48 to obtain title by prescription under the terms of that statute. See OCGA § 44-5-161 ("In order for possession to be the foundation of prescriptive title, it . . . [m]ust be in the right of the possessor and not of another"); OCGA § 48-4-48 (title by prescription must ripen *"under a tax deed"*) (emphasis supplied). Because Nix had no interest in the Property under the tax deed from 1999-2009, she could not properly assert that she could obtain prescriptive title to the subject Property under that tax deed pursuant to OCGA § 48-4-48.

Further, even after the tax deed reverted back to Nix on May 6, 2009, the running of the prescription period could not yet begin, as the time period was tolled due to the pending litigation with CRR in *Community I* and *Community II.* See *Machen v. Wolande Mgmt. Group,* 271 Ga. 163 (1) (517 SE2d 58) (1999) (filing of redemption action before running of the prescription period tolls running of prescription period). Thus, the prescription period would have begun for Nix, at the earliest, after this Court's decision in *Community II* became final in February 2011.[3]

In any event, regardless of when the prescription period began to run, Nix's claim of prescriptive title through adverse possession still fails, as she has made no showing that, at any time, she publicly, continuously, exclusively, and peaceably possessed the Property on an uninterrupted basis under a claim of right for at least four years. To the contrary, the affidavits of record[4] revealed that, even after two

---

[2] We note that, based on our decision in *Community II,* the instant case does not present a situation where the party with a defeasible interest in a property retained title or the tax deed to the property in question notwithstanding the existence of a deed to secure debt.

[3] It is worth noting that, even if Nix had retained her tax deed which she initially received on February 25, 1999, and the prescription period began to run at that time, the four-year period still would not have expired before CRR filed its lawsuit to redeem the Property on February 20, 2003.

[4] Kirkwood Homes submitted a timely affidavit in support of its motion for summary judgment, whereas Nix did not submit an affidavit of her own until oral argument on the parties' cross-motions for summary judgment had already taken place. While the trial court

years of litigation with Kirkwood Homes, the Property consisted of wild, unfenced land, with no dedicated structures to be found on the Property and no items being stored there, and with no apparent indication that the Property was being used in any way. In her effort to show that the Property was being used in a manner that would support her claim for prescriptive title, Nix herself only provided testimony through her affidavit that she had maintained the Property by cleaning trash, harvesting plants, trying to establish a garden, occasionally storing building materials, and building a garage on a *separate* property that encroached somewhat onto the Property at issue here. The trial court did not err in concluding that, as a matter of law, Nix has not shown the type of possession that would be "so exclusive as to prevent actual occupation by another" and satisfy the requirements for showing adverse possession. *Bailey v. Moten*, 289 Ga. 897, 900 (2) (717 SE2d 205) (2011) (mowing property, cutting trees, occasionally cleaning, and periodically using property for family gatherings insufficient to establish adverse possession, as such activities did not indicate actual possession which is "so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another") (citation and punctuation omitted). See also OCGA § 44-5-165 ("Actual possession of lands may be evidenced by enclosure, cultivation, or any use and occupation of the lands which is *so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another*") (emphasis supplied).

Because Nix did not terminate the right of redemption or obtain title to the Property by prescription, Kirkwood Homes had the right to redeem the Property as the grantee of the original owner prior to the tax sale. See OCGA § 48-4-40 (2) ("[A]ny person having any right, title, or interest in or lien upon [the subject] property may redeem the property from the sale by the payment of the [redemption price] . . . [a]t any time after the [tax] sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45"). Furthermore, because Nix received and rejected a financially sufficient tender from Kirkwood Homes on March 5, 2015,[5] her tax deed

---

indicated in its final order that it did "not believe [that] Ms. Nix's affidavit should be considered in support of her adverse possession claims," the court did consider the content of Nix's affidavit in the final order. See *Liberty Nat. Life Ins. Co. v. Houk*, 248 Ga. 111, 112 (1) (281 SE2d 583) (1981) ("[T]he consideration of an untimely affidavit is within the trial court's discretion").

[5] While Nix did not provide a payoff amount to Kirkwood Homes, the trial court indicates in its order that Nix stipulated at the hearing on the parties' cross-motions for summary judgment that this $75,000 tender was sufficient. Nix has decided to exclude the hearing transcript from the record on appeal. So, she is in no position to challenge the trial court's finding as to the sufficiency of the tender. See, e.g., *Smelser v. Smelser*, 280 Ga. 92, 94 (623 SE2d

was extinguished, and she waived any further tender. See *Bowman v. Poole*, 212 Ga. 261 (2) (91 SE2d 770) (1956) (" '[W]here the creditor has collateral mortgage, or other form of security upon the property of the debtor, the failure to accept legal tender discharges the lien which was intended to secure payment.' The same principle is applicable to a tender made by the owner . . . for the purpose of redeeming his property from a tax sale. [Cit.]"); *B-X Corp. v. Jeter*, 210 Ga. 250, 255 (2) (78 SE2d 790) (1953) ("[T]ender of an amount due is waived when the party entitled to payment, by declaration or by conduct, proclaims that, if tender of the amount due is made, an acceptance of it will be refused. [Cits.]"). Accordingly, because Kirkwood Homes properly redeemed the Property after Nix failed to foreclose the right of redemption, we find that the trial court properly declared Kirkwood Homes to be the fee simple owner of the Property.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 2016.

*Gregory W. Sturgeon*, for appellant.
*Ayoub & Mansour, John A.B. Ayoub, Carolina D. Bryant; Adam C. Caskey*, for appellee.

---

480) (2005) ("Inasmuch as consideration of this issue is dependent upon the transcript of evidence and proceedings and we have no transcript, we must presume that the evidence considered by the trial court supported the findings made") (citation and punctuation omitted). Based on tax records submitted in the case, the special master and the trial court determined that the actual payoff price for the tax deed was $26,658.54. Because this amount is supported by evidence, we find no error in the trial court allowing Kirkwood Homes to pay this amount to actually redeem the Property.